2002 UT App 160

■

STATE of Utah, Plaintiff and Appellee,

v.

Kenneth BEACH, Defendant and Appellant.

No. 20010445–CA.

Court of Appeals of Utah.

May 16, 2002.

Heather Johnson and Otis Sterling III, Salt Lake City, Salt Lake Legal Defender Association, for Appellant.

Mark L. Shurtleff, Attorney General and Brett J. DelPorto, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges JACKSON, BILLINGS, and BENCH.

## OPINION

BENCH, Judge.

¶ 1 Defendant appeals his conviction of possession of a controlled substance, arguing that the officers did not possess a reasonable articulable suspicion sufficient to justify his detention. We affirm.

## BACKGROUND

¶ 2 On September 8, 2001, Officer Leavitt and two other officers from the Salt Lake City Police Department assigned to the narcotics interdiction unit were driving in an unmarked police car on a street in a neighborhood with a known drug house. Officer Leavitt, who was driving, noticed a car facing the opposite direction, which had no visible license plates and was parked partially in the traffic lane. Because the street is very narrow, the officers had to slow their vehicle to five miles per hour to pass the other car. As the officers drove by, they noticed Defen-

dant, who was standing outside of the car, pass something to one of the two individuals in the car. The exchange drew Officer Leavitt's attention because it was accomplished in a manner that is commonly used in drug transactions. As Officer Leavitt tried to turn the police car around to come in behind the parked car, Defendant began to walk away rapidly in the opposite direction. Officer Leavitt activated the police car's emergency lights, then got out of the car and went after Defendant, asking if he could talk to him. The other officers remained with the parked vehicle and its occupants.

¶ 3 Officer Leavitt identified himself as a police officer and asked Defendant for some identification. Defendant produced a Utah ID card. Officer Leavitt asked Defendant why he was in the area, and Defendant indicated that he buys and repairs cars. He stated that he had driven to the neighborhood in the car occupied by the other two individuals, in hopes of selling the car to them. Defendant claimed that the exchange Officer Leavitt had observed involved only the car's paperwork. During this conversation, Defendant admitted that the car was not properly registered and that he had driven it there, even though he did not have a valid driver license.

¶ 4 Officer Leavitt testified that throughout the course of the interview, Defendant appeared extremely nervous. Officer Leavitt asked for consent to search Defendant, and Defendant did not respond verbally. Instead, he began emptying his pockets, pulling out pocket change, a folded flyer, and a receipt from an auto yard indicating the receipt of $500 although it did not indicate what was purchased. Officer Leavitt again inquired if Defendant would consent to a search. Defendant asked if he had done anything wrong. Officer Leavitt replied that he had admitted to driving an unregistered vehicle, without a valid license. Officer Leavitt also commented on Defendant's extreme and continued nervousness. Defendant said it was because he had a pornographic magazine, which he then handed to Officer Leavitt. Officer Leavitt determined that it was an adult magazine and returned it

to Defendant, telling him that it was fine for Defendant to have it.

¶ 5 Officer Leavitt again asked Defendant for permission to search. This time, Defendant answered the question by replying, "Go ahead." Officer Leavitt advised Defendant that he did not have to allow the search, and Defendant responded, "I'm not going to lie to you guys, I have a little." Defendant then produced from his pocket a baggy of methamphetamine. A search incident to Defendant's arrest produced a second baggy of methamphetamine. After Defendant's arrest, Officer Leavitt talked with the other officers, who had interviewed the occupants of the car. Officer Leavitt learned that the occupants had said they were interested in buying the car from Defendant and were test-driving it when the officers approached. Dispatch records show a total of twenty-two minutes elapsed from the time of Officer Leavitt's first contact with Defendant, to the time Defendant was transported to the jail.

¶ 6 Defendant was charged with and pleaded guilty to possession of a controlled substance after the trial court denied his motion to suppress the evidence. Defendant now appeals his conditional guilty plea.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Defendant argues that Officer Leavitt did not have a reasonable articulable suspicion of criminal activity to justify detaining him on a level-two stop. " '[W]hether a specific set of facts gives rise to reasonable suspicion is a determination of law and is reviewable nondeferentially for correctness ... [with] a measure of discretion to the trial judge when applying that standard to a given set of facts.' " *City of St. George v. Carter,* 945 P.2d 165, 168 (Utah Ct.App.1997) (quoting *State v. Pena,* 869 P.2d 932, 939 n. 4 (Utah 1994)) (alterations in original). Second, Defendant contends that his consent to search was not voluntarily given. We "review the trial court's 'ultimate conclusion that a consent was voluntary or involuntary' for correctness." *State v. Ham,* 910 P.2d 433, 438 (Utah Ct.App.1996) (quoting *State v. Thurman,* 846 P.2d 1256, 1271 (Utah 1993)).

## ANALYSIS

¶ 8 In determining whether the officers had a reasonable articulable suspicion to justify Defendant's temporary detention, we "look to the totality of the circumstances ... to determine if there was an objective basis for suspecting criminal activity." *State v. Humphrey*, 937 P.2d 137, 141 (Utah Ct. App.1997). In considering the totality of the circumstances, we " 'judge the officer's conduct in light of common sense and ordinary human experience ... and we accord deference to an officer's ability to distinguish between innocent and suspicious actions." *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir.2001).

¶ 9 Officer Leavitt testified that he and the other officers were in the area for the express purpose of detecting drug activity and that they had singled out that area because of its proximity to a known drug house. Officer Leavitt's training and experience as a police officer led him to suspect illegal activity when he observed occupants of a vehicle, which had no license plates and was parked in a manner that obstructed traffic, make a hand-to-hand exchange with a pedestrian. This case is therefore distinguishable from *Salt Lake City v. Ray*, 2000 UT App 55, 998 P.2d 274. In *Ray*, the officers did not observe any behavior by the defendant that might have been criminal. *See id.* at ¶ 19. The officers in *Ray* had "no knowledge of any violation of the law that Ray might have committed or was about to commit," *id.*, but were investigating only because they had received a complaint about a "suspicious female." *Id.* at ¶ 3. Here, Officer Leavitt observed specific behavior that reasonably led him to suspect that Defendant was distributing a controlled substance.

¶ 10 This case is similar to *Provo City v. Spotts*, 861 P.2d 437 (Utah Ct.App.1993). In *Spotts*, we concluded that a police officer who observed the defendant smoking what could have been a cigarette, but what the officer suspected to be a marijuana joint, had sufficient reasonable suspicion to investigate further. *See id.* at 440. We held that "although defendant's activity was conceivably consistent with innocent activity, it was strongly indicative of criminal activity," and therefore the detention was reasonable. *Id.*

¶ 11 In this case, Defendant argues that Officer Leavitt impermissibly exceeded the scope of the detention when he continued to question Defendant after Defendant offered an innocent explanation for his actions, because the explanation should have alleviated Officer Leavitt's suspicions of drug activity. While some of Defendant's activities could be explained as innocent, " 'officers need not close their eyes to suspicious circumstances.' " *Williams*, 271 F.3d at 1270 (citation omitted). Officer Leavitt was not bound to accept Defendant's first explanation as truthful, particularly when he observed other suspicious actions by Defendant. These actions included Defendant's haste to exit the scene when first approached and his extreme and continued nervousness, which were at odds with Defendant's seemingly innocuous explanation and bore further investigation.

¶ 12 We are satisfied that " '[t]he length and scope of the detention [was] "strictly tied to and justified by" the circumstances which rendered its initiation permissible.' " *State v. Hansen*, 2000 UT App 353,¶ 11, 17 P.3d 1135 (citations omitted) (first alteration in original). The twenty-two minute time frame from Officer Leavitt's first contact with Defendant to when Defendant was on his way to jail was not excessive in light of the circumstances. The scope of Officer Leavitt's questioning was also reasonably related to the original purpose of the stop—suspected drug activity. The cases Defendant relies on are distinguishable because they involve stops initiated by a traffic violation, where the violation was resolved but the officer continued the detention. *See, e.g.*, *Hansen*, 2000 UT App 353, 17 P.3d 1135; *State v. Robinson*, 797 P.2d 431 (Utah Ct. App.1990). Thus, Officer Leavitt's continued questioning to dispel his original suspicion was not unreasonable.

¶ 13 Finally, Defendant argues that his consent to the search was not voluntary because of the coercive circumstances and the illegality of the stop. We need not reach the issue of whether Defendant's consent to search was voluntarily given because Defendant was not searched until after he was

arrested. The first baggy of methamphetamine was not found as a result of a search. Rather, Defendant pulled it out of his pocket in response to Officer Leavitt's investigative questioning. Therefore, whether Defendant's consent to search was voluntarily given is a moot issue.

¶ 14 Defendant contends that the evidence should have been suppressed because he produced the drugs only because a search was imminent. We disagree. Officer Leavitt did not use any show of force or authority, which might otherwise support Defendant's contention. *See State v. Bisner,* 2001 UT 99, ¶ 47, 37 P.3d 1073 (listing factors determining coerciveness of circumstances, including claim of authority or exhibition of force). In fact, when Defendant consented to the search, Officer Leavitt did not immediately search him, but told Defendant he did not have to consent to the search. At that point, Defendant incriminated himself by producing the first baggy of methamphetamine. The trial court correctly ruled, therefore, that the evidence was admissible.

## CONCLUSION

¶ 15 We conclude that Officer Leavitt had sufficient reasonable, articulable suspicion of criminal activity to justify Defendant's detention. When considering the totality of the circumstances, Defendant's explanation of his activities was not sufficient to explain his actions. Therefore, the trial court correctly ruled that Officer Leavitt did not impermissibly exceed the scope of the detention when he continued questioning Defendant. Because Defendant produced the incriminating evidence before any search, we need not address whether Defendant's consent to search was voluntary.

¶ 16 Accordingly, Defendant's conviction is affirmed.

¶ 17 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JUDITH M. BILLINGS, Associate Presiding Judge.