2005 UT App 464

**STATE of Utah, Plaintiff and Appellant,**

v.

**Lowell SINGLETON, Defendant and Appellee.**

No. 20040731–CA.

Court of Appeals of Utah.

Nov. 3, 2005.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, and Donna M. Kelly, Provo, for Appellant.

Margaret P. Lindsay, Orem, for Appellee.

Before BILLINGS, P.J., GREENWOOD and McHUGH, JJ.

OPINION

BILLINGS, Presiding Judge:

¶ 1 The State of Utah appeals from the trial court's order dismissing with prejudice the charge of drug possession with intent to distribute against Defendant Lowell Singleton. *See* Utah Code Ann. § 58–37–8(1)(a)(iii) (Supp.2005). The State argues that the facts in this case establish reasonable suspicion for the detention of Defendant, and as a result, the evidence should not have been suppressed and the case should not have been dismissed by the trial court. We agree with the State and reverse and remand.

BACKGROUND

¶ 2 On January 3, 2004, just before midnight, Officer Robert Welcker was patrolling the streets of American Fork City in a marked police car. Officer Welcker decided

to drive through a trailer park that was known among law enforcement as a drug trafficking area. Officer Welcker had previously made drug-related arrests at that location. At the entrance of the trailer park, Officer Welcker observed two people, later identified as Stephen Lundy and Defendant, conduct some kind of hand-to-hand transaction as they stood near a parked vehicle.

¶ 3 Officer Welcker pulled his patrol car behind the parked vehicle, making sure not to block the vehicle's exit. As he was doing so, Lundy turned and walked to the passenger side of the parked vehicle while Defendant turned and walked toward the trailer court. Officer Welcker got out of his patrol car and approached the parked vehicle. As he approached the vehicle, he saw Lundy kick something into the snow under the car. Officer Welcker asked Lundy to approach him at the rear of the vehicle and commanded Defendant in a stern voice to come back to the vehicle. Officer Welcker detained Defendant while he talked with Lundy and investigated further. After obtaining a statement from Lundy, Officer Welcker searched Defendant and found seventy dollars in cash. During his investigation, Officer Welcker located an existing warrant for Defendant's arrest. Defendant and Lundy were subsequently arrested and transported to jail by Officer William Loveridge.

¶ 4 On January 11, eight days after Defendant was arrested and transported to jail, Officer Loveridge found fifteen baggies containing a white powdery substance under the seat of the patrol vehicle in which Defendant had previously sat. No one had been in the back of Officer Loveridge's patrol vehicle since Loveridge had transported Defendant and Lundy to jail. Defendant was subsequently charged with possession of methamphetamine in a drug-free zone with intent to distribute, a first-degree felony pursuant to Utah Code section 58–37–8(1)(a)(iii). *See id.*

¶ 5 Defendant later moved to suppress the evidence arguing that there was no reasonable suspicion to support his original seizure and thus all subsequent contraband must be suppressed. During a subsequent evidentiary hearing, Officer Welcker testified that although he did not know what was occurring when he observed the hand-to-hand actions between Defendant and Lundy, based on his training and experience as a narcotics officer, this behavior was consistent with an exchange for drugs. After the evidentiary hearing, the trial court granted Defendant's motion to suppress the evidence. The trial court thereafter certified that the suppression of the evidence substantially impaired the State's ability to prosecute the case and it dismissed the case against Defendant with prejudice. The State appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 6 At issue is whether the trial court erred by suppressing evidence from the stop on the basis that the facts did not support a reasonable suspicion of criminal activity, and therefore, whether the subsequent seizure of drugs was tainted by this illegality. This court reviews the factual findings underlying a trial court's decision to grant or deny a motion to suppress for clear error. *See State v. Krukowski*, 2004 UT 94,¶ 11, 100 P.3d 1222. The trial court's legal conclusions are reviewed non-deferentially for correctness, including its application of the legal standard to the facts. *See State v. Brake*, 2004 UT 95,¶ 11, 103 P.3d 699.

## ANALYSIS

■ ¶ 7 The State argues that the totality of the circumstances in this case demonstrates that Officer Welcker had sufficient reasonable suspicion of criminal activity to seize Defendant. We agree.

■ ¶ 8 Reasonable suspicion arises from "specific and articulable facts" and the "rational inferences from those facts." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Courts "look to the totality of the circumstances ... to determine if there was an objective basis for suspecting criminal activity." *State v. Beach*, 2002 UT App 160,¶ 8, 47 P.3d 932 (quotations and citation omitted). Moreover, courts "accord deference to an officer's ability to distinguish between innocent and suspicious actions." *Id.* (quotations and citation omitted). In conducting the reasonable suspicion analysis, officers may "draw on their own experi-

ence and specialized training to make inferences from deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quotations and citation omitted).

¶ 9 The State argues that the finding of reasonable suspicion in the United States Supreme Court case of *Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), as well as this court's decision in *Beach*, 2002 UT App 160, 47 P.3d 932, demonstrate that, given the totality of the circumstances in this case, the facts before Officer Welcker were sufficient to justify a finding of reasonable suspicion of drug activity. In *Wardlow*, a caravan of police officers drove through a neighborhood known for heavy narcotics trafficking. *See* 528 U.S. at 121, 120 S.Ct. 673. Officers saw the defendant standing next to a building holding an opaque bag, and when the defendant noticed the officers, he ran away. *See id.* at 122, 120 S.Ct. 673. Officers pursued, stopped, and frisked the defendant and uncovered a loaded weapon. *See id.* The Court indicated that although an individual's presence in an area of expected criminal activity is not enough to support reasonable suspicion, it is a relevant consideration, and that "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id.* at 124, 120 S.Ct. 673. Additionally, the Court emphasized defendant's unprovoked flight that aroused the officers' suspicion, and held that while an individual, when approached, has a right to ignore the police and go about his or her business, nervous, evasive behavior is an important factor in determining reasonable suspicion and that unprovoked flight is the exact opposite of going about one's business. *See id.* at 119–20, 120 S.Ct. 673. The Court went on to state that "[h]eadlong flight ... is the consummate act of evasion." *Id.* at 124, 120 S.Ct. 673. Ultimately, the Court in *Wardlow* held that reasonable suspicion existed based on the area's reputation for drug trafficking, as well as defendant's behavior towards the officers. *See id.* at 124–25, 120 S.Ct. 673.

¶ 10 Similarly, in *Beach*, officers were patrolling a street in a neighborhood known for drug trafficking. 2002 UT App 160 at ¶ 2, 47 P.3d 932. One officer observed a car with no license plates, which obstructed traffic in the lane. *See id.* Upon approaching the car, the officer noticed the defendant, who was standing next to the car, make a hand-to-hand exchange with someone in the car. *See id.* Upon noticing the officers, the defendant "began to walk away rapidly in the opposite direction." *Id.* The officer stopped the defendant, interviewed him, discovered he was in possession of methamphetamines, and arrested him. *See id.* at ¶¶ 2–3. The court stated that the officer's observation of a vehicle with no license plates, parked in a manner that obstructed traffic, together with a hand-to-hand exchange between individuals in an area known for drug traffic, were sufficient facts to constitute reasonable suspicion. *See id.* at ¶ 9.

¶ 11 Defendant attempts to distinguish *Wardlow* and *Beach* on the basis that in those cases, reasonable suspicion was supported by the defendant's headlong flight or quick walking away from officers, and here, Defendant merely turned and walked away from Officer Welcker. However, whether an individual engages in evasive behavior does not hinge upon whether that individual attempts to flee with great speed. *See, e.g., U.S. v. Bull*, 565 F.2d 869 (4th Cir.1977) (finding a stop was justified where, in addition to other suspicious behavior, suspects in deserted shopping area turned their backs to police when officers drove by). Defendant's walking away from Officer Welcker can be considered an act of evasion, which leads to reasonable suspicion, especially in light of the surrounding circumstances that included a hand-to-hand exchange in an area known for drug trafficking. Given this context, such actions cannot be considered as going about one's business, *Wardlow*, 528 U.S. at 119–20, 120 S.Ct. 673, and justify a finding of reasonable suspicion.

¶ 12 Defendant also attempts to distinguish *Beach* by emphasizing the importance of the officer's initial suspicion of traffic violations in that case, a fact absent from the instant

case. We do not find this argument persuasive. In the instant case, Officer Welcker observed Defendant engaging in a hand-to-hand exchange within an area known for drug trafficking. Although the officers in *Beach* initially became interested in a vehicle because of potential traffic violations, it was the officers' observation of a hand-to-hand exchange in an area known for drug trafficking which formed a sufficient and independent basis for reasonable suspicion of the defendant in that case. In distinguishing the facts in *Beach* from our prior case of *Salt Lake City v. Ray*, 2000 UT App 55,¶¶ 18–19, 998 P.2d 274, where we held that there was no reasonable suspicion, we stated that "[i]n *Ray*, the officers did not observe *any* behavior by the defendant that might have been criminal. . . . Here [the officer] observed specific behavior that reasonably led him to suspect that Defendant was distributing a controlled substance." *Beach*, 2002 UT App 160 at ¶ 9, 47 P.3d 932 (emphasis added). In the instant case, Officer Welcker testified that he observed behavior by Defendant that he thought could involve drug trafficking.

¶ 13 Finally, Defendant argues that Officer Welcker did not claim he had reasonable suspicion of drug trafficking. Specifically, Defendant argues that Officer Welcker's testimony that Defendant was free to leave throughout the detention and that Welcker did not know what was occurring during the hand-to-hand exchange demonstrates that Welcker did not have a subjective belief that reasonable suspicion existed, and as a result, reasonable suspicion did not exist. However, an officer's subjective belief is only one factor in evaluating the totality of the circumstances, *see State v. Warren*, 2003 UT 36,¶ 21, 78 P.3d 590, and the test is an objective one, *see State v. Struhs*, 940 P.2d 1225, 1228 (Utah Ct.App.1997) ("The assessment of whether reasonable suspicion exists is an objective standard based on the totality of the circumstances."). Moreover, the Utah Supreme Court, in *State v. Markland*, stated that "[a]s long as the underlying facts, and reasonable inferences drawn from those facts, justify the conclusion that reasonable suspicion existed at the inception of a level-two stop," the officer should not be faulted for "not connecting his own testimonial dots." 2005 UT 26,¶ 19, 112 P.3d 507.

## CONCLUSION

¶ 14 We determine that the trial court erred by granting Defendant's motion to suppress evidence on the basis that no reasonable suspicion existed to detain Defendant, and we further conclude that its subsequent dismissal of the State's case was improper. Accordingly, we reverse and remand so that the trial court may conduct proceedings consistent with this decision.

¶ 15 WE CONCUR: PAMELA T. GREENWOOD and CAROLYN B. McHUGH, Judges.