2007 UT App 266

**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael W. DENNIS, Defendant and Appellant.**

**No. 20060416–CA.**

Court of Appeals of Utah.

Aug. 2, 2007.

Samuel S. Bailey, Price, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, P.J., GREENWOOD, Associate P.J., and THORNE, J.

## OPINION

THORNE, Judge:

¶ 1 Michael W. Dennis brings this interlocutory appeal from the district court's denial of his motion to suppress evidence. We affirm the denial of Dennis's motion and remand this matter for further proceedings.

### FACTUAL BACKGROUND [1]

¶ 2 At approximately 3:00 a.m. on October 18, 2005, Helper City Police Officers Trent Anderson and Lynn Archuleta were both on duty and were parked next to each other in front of a local business on SR6, a public highway. Anderson observed a black pickup truck fail to come to a complete stop at a stop sign before turning onto SR6, and as the truck passed the officers Archuleta saw that the truck had a cracked windshield. Archuleta commented to Anderson that he had seen the same truck parked earlier at a local motel known to both officers as a location frequented by drug dealers and users. Anderson proceeded to make a traffic stop of the truck based on the stop sign violation.

¶ 3 Upon stopping the vehicle, Anderson recognized both occupants of the truck, driver Brian Straugh and passenger Dennis. Anderson had dealt with both individuals in the past and was aware that they had both been involved in previous drug and burglary offenses. Both Straugh and Dennis appeared to Anderson to be extremely nervous. Anderson obtained Straugh's driver license and documents and returned to his patrol car where he called Archuleta for backup and initiated warrants checks on both individuals.

¶ 4 Archuleta arrived and the two officers conversed while awaiting the results of the warrants checks. About eight minutes after Anderson initially stopped the pickup, dispatch reported that Straugh's license was valid and that neither Straugh nor Dennis had any outstanding warrants. Anderson and Archuleta then approached the vehicle and began questioning Straugh and Dennis about their activities and what they had been doing at the motel. At some point, the officers noticed various items in the truck that they found to be suspicious under the circumstances, including an unhooked car stereo amplifier, rolling papers, a green cylindrical object that Anderson believed to be a drug pipe, and loose baggies on the floor.

¶ 5 During the course of the questioning, Archuleta observed Dennis attempting to conceal a black item in his sweatshirt pocket. The item resembled the handle of a gun or knife, so Archuleta ordered Dennis out of the vehicle and removed the item, a coin purse, from Dennis's pocket. At this time, Archuleta noticed an odor of marijuana about Dennis's person. Archuleta opened the coin purse and found controlled substances. The officers arrested Dennis and found more controlled substances in the truck when they searched it incident to Dennis's arrest.

¶ 6 Dennis filed a motion in the district court seeking to suppress the evidence ob-

---

1. Except as discussed herein, Dennis does not challenge the facts reflected in the district court's order. Accordingly, we accept the version of events found by the district court.

tained from the traffic stop. The district court denied Dennis's motion, concluding that the initial stop was clearly valid and that the eight minute detention while awaiting the warrants checks was not improper. The district court analyzed the next few minutes of the traffic stop as follows:

> When Officer Anderson approached the truck for the second time together with Officer Archuleta, Officer Anderson immediately asked Straugh about being at the [motel]. This was an improper question and not related to the traffic stop, but Straugh had no need to answer the question. The Officers had legitimate factors at this juncture for reasonable suspicion, namely that it was 3:00 in the morning, that they knew the subjects and that the subjects had criminal histories, that the subjects had been at the [motel], and that the subjects were acting nervous. These factors, while being reasons for suspicion, carry minimal weight. However, the Officers were certainly justified in inquiring about the loose amplifier based on their knowledge of the defendants' backgrounds, the fact that the amplifier was not hooked up, and the time of day. Additionally, the Officers also saw the [rolling] papers and the green paraphernalia.
>
> The detention of the subjects was less than two (2) minutes before the Officers had their reasonable suspicions aroused by the amplifier, the [rolling] papers, the green paraphernalia, and loose baggies on the floor of the vehicle. This brief detention of the subjects was not an unreasonable extension of time beyond the time needed for issuance of a traffic citation.

The district court also addressed the search of the coin purse, finding that it was reasonable to remove the purse from Dennis's pocket due to its resemblance to a weapon. As to the opening of the coin purse, the district court concluded that "it was apparent from the evidence that the subjects were going to jail and the contents of the purse would be discovered either through an inventory or through inevitable discovery."

## ISSUES AND STANDARDS OF REVIEW

▪ ¶ 7 Dennis challenges the district court's denial of his motion to suppress, arguing that the officers continued to detain and question him on matters unrelated to the reasons for the traffic stop after the initial justification for the stop was complete. "We review the legality of a search and seizure for correctness, giving no deference to the decision of the trial court." *State v. Hogue*, 2007 UT App 86, ¶ 5, 157 P.3d 826; *see also State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699 ("We abandon the standard which extended 'some deference' to the application of law to the underlying factual findings in search and seizure cases in favor of non-deferential review.").

▪ ¶ 8 Dennis also challenges[2] the trial court's factual finding that less than two minutes elapsed between the time the officers approached the truck after the warrants check and their discovery of the loose amplifier and suspected drug paraphernalia. " 'On appeal from the denial of a motion to suppress, we review the trial court's factual findings for clear error.' " *State v. Merworth*, 2006 UT App 489, ¶ 4, 153 P.3d 775 (quoting *Salt Lake City v. Ray*, 2000 UT App 55, ¶ 8, 998 P.2d 274), *cert. denied*, No. 20070076 (Utah May 22, 2007).

## ANALYSIS

¶ 9 Dennis first argues, citing *State v. Lopez*, 873 P.2d 1127 (Utah 1994), that the officers should have allowed Dennis and Straugh to continue on their way after Straugh produced a valid driver license and demonstrated entitlement to use the vehicle. *See id.* at 1132. Specifically, Dennis complains that the officers' continued detention of the pair to question them about their prior activities was not related to the traffic stop and violated Dennis's right to be free from unreasonable search and seizure. *See* U.S. Const. amend. IV; Utah Const. art. I, § 14.

¶ 10 Dennis correctly cites *Lopez* for the proposition that "an officer conducting a rou-

---

2. Dennis briefed a third issue pertaining to the officers' opening of the coin purse after it was removed from Dennis's pocket. However, Dennis conceded this issue at oral argument, and we therefore do not address it here.

tine traffic stop may request a driver's license and vehicle registration, conduct a computer check, and issue a citation," but "once the driver has produced a valid driver's license and evidence of entitlement to use the vehicle, he must be allowed to proceed on his way, without being subjected to further delay by police for additional questioning." 873 P.2d at 1132 (quotations and citations omitted). However, *Lopez* went on to recognize that officers may permissibly detain a stopped driver for investigative questioning unrelated to the traffic stop if the further detention and questioning is "supported by reasonable suspicion of more serious criminal activity." *Id.* In this case, the district court found that the officers did have reasonable suspicion sufficient to *briefly* detain and question Straugh and Dennis based on the early morning hour, the officers knowledge of the truck's occupants and their criminal histories, the truck's earlier presence at a location known for drug activity, and the occupants' nervousness. The district court also found that reasonable suspicion existed to question Dennis and Straugh about the loose amplifier and drug paraphernalia, although the order is unclear about the exact timing of the officers' discovery of those items and Dennis challenges that timing on appeal.

¶ 11 Thus, even without consideration of the amplifier and paraphernalia, the district court found that there was reasonable suspicion to detain Straugh and Dennis for questioning unrelated to the traffic stop.[3] Dennis's challenge to this finding on appeal amounts to an assertion that the combination of factors employed by the district court cannot give rise to reasonable suspicion because each individual factor, standing alone, would not do so. This is clearly not the law. Rather, "courts must look to the 'totality of the circumstances' to determine whether,

taken together, the facts warranted further investigation by the police officer." *State v. Alverez*, 2006 UT 61, ¶ 14, 147 P.3d 425 (quoting *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)).

¶ 12 We agree with Dennis, and the district court, that each of the factors relied on below carries minimal weight and could probably not support reasonable suspicion on its own. Utah courts have repeatedly addressed nervousness as a factor supporting reasonable suspicion and have long downplayed its significance. *See, e.g., State v. Mendoza*, 748 P.2d 181, 184 (Utah 1987); *State v. Lafond*, 2003 UT App 101, ¶ 15 n. 8, 68 P.3d 1043; *State v. Robinson*, 797 P.2d 431, 436 (Utah Ct.App.1990) ("In the absence of other, objective facts, we decline to give much weight to an officer's assessment of 'nervousness' due to the subjectivity of that determination."). Similarly, the late hour is not particularly suspicious given the location of the stop on a public highway. *See Mendoza*, 748 P.2d at 183–84 ("[T]ravelers use the interstate highway at all times of the day and night...."); *State v. Steward*, 806 P.2d 213, 216 (Utah Ct.App.1991) (holding no reasonable suspicion where only indicia of criminal activity was truck driving on public road late at night). Criminal history alone is also "insufficient to give rise to the necessary reasonable suspicion" to shift the focus of a traffic stop to an investigation of criminal activity. *United States v. Wood*, 106 F.3d 942, 948 (10th Cir.1997); *see also United States v. Sandoval*, 29 F.3d 537, 543 (10th Cir.1994) ("If the law were otherwise, any person with any sort of criminal record ... could be subjected to a *Terry*-type investigative stop by a law enforcement officer at any time without the need for any other justification at all."). And finally, without more detail,[4] Dennis and Straugh's presence at the

---

3. We are aware that the district court observed that the factors it was relying on "carry minimal weight." Nevertheless, the district court clearly found that the combination of those factors did give rise to reasonable suspicion.

4. At the suppression hearing, Archuleta testified that he had observed Dennis and Straugh "doing something" to the driver's side door of the truck when he observed them at the motel. The State

suggests that this fact is indicative of concealing contraband and cites two out-of-state cases to that effect. *See People v. Olivas*, 859 P.2d 211, 216 (Colo.1993) ("An experienced law enforcement officer might reasonably believe that the area behind a loose door panel is a likely place to hide contraband while it is being transported on interstate highways."); *Bustamante v. State*, 917 S.W.2d 144, 145 (Tex.App.1996) (observing that "a car door is a place commonly used to

motel gives little indication that they were involved in any of the illegal activities that may have previously occurred there. *See State v. Singleton*, 2005 UT App 464, ¶ 9, 128 P.3d 28 ("[A]lthough an individual's presence in an area of expected criminal activity is not enough to support reasonable suspicion, it is a relevant consideration . . . ."); *see also Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.").

■ ¶ 13 However, the question before us is whether the district court erred in concluding that the *combination* of identified factors supports a finding of reasonable suspicion. Dennis's entire argument in this regard is the bare assertion that "[t]he officers' suspicions, viewed separately or together, were not a reasonable indication of possible criminal activity." This represents inadequate briefing of this complex issue. *See* Utah R.App. P. 24(a)(9); *Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14 (discussing inadequate briefing and noting that "[a]n issue is inadequately briefed when 'the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court'" (quoting *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998))).

¶ 14 In light of Dennis's inadequate briefing, we decline to disturb the district court's finding of reasonable suspicion. We note that the factors employed by the district court are generally the types of factors that this and other courts have relied on to analyze reasonable suspicion, and that the district court's finding does not appear unreasonable on its face. Cases examining combinations of arguably innocuous circumstances have come down both ways on the issue of reasonable suspicion. *Compare, e.g., State v. Humphrey*, 937 P.2d 137, 141–43 (Utah Ct.App.1997) (upholding finding of reasonable suspicion based on "past criminal activity, nervousness, anger, and traveling back from a known drug community"), *with*

*State v. Alvey*, 2007 UT App 161, ¶¶ 2–7, 577 Utah Adv. Rep. 15 (holding that a level two detention was illegal where defendant with known criminal history was discovered "walking in circles" in bank parking lot at 2:30 a.m.). While a careful analysis of these and similar cases might convince us that the facts of this case mandate one result or the other, we will not conduct that analysis on a party's behalf in the absence of adequate briefing. Accordingly, we affirm the district court's finding that Dennis's detention was at all times supported by reasonable suspicion on the part of the officers.

■ ¶ 15 Dennis also challenges the trial court's finding that less than two minutes elapsed between the conclusion of the warrants checks and the officers' discovery of various suspicious items in the cab of Straugh's truck. In light of our determination that Dennis has failed to adequately challenge the district court's reasonable suspicion finding, the exact amount of time before the discovery of each item is not critical to today's analysis. Nevertheless, we address this issue because the discovery of the other items, in particular the suspected drug paraphernalia, would clearly give rise to independent reasonable suspicion that would justify Dennis's additional detention.

¶ 16 Dennis's timing challenge relies primarily on analysis of the video recording of the traffic stop that was played before the district court. According to Dennis, the video demonstrates the timing of the discovery of each item based on the first mention of each item by the officers. Measured from Mitchell's second approach to the stopped truck, Dennis asserts the lapse of one minute before the officers mention the amplifier; two and a half minutes for the rolling papers and suspected pipe; and five minutes for the small baggies.

¶ 17 Dennis's methodology assumes that the officers announced their observations of each item immediately upon noticing it. This assumption might bear consideration if an

conceal contraband"). We do not draw any such inference from Archuleta's extremely broad description of Dennis and Straugh's activities

and, according to their testimony, neither did the officers.

item presented an immediate danger, such that one officer might be expected to immediately alert the other to its presence. However, we see no reason to believe that the officers would necessarily treat the suspicious, but harmless, items in this case in the same manner. Further, the video clearly shows the officers scanning the interior of the vehicle with their flashlights throughout the interaction. It is a reasonable inference that the officers were making a continual visual inspection of the interior of the truck for weapons or contraband, particularly in light of their suspicions about Straugh and Dennis. Under these circumstances, we see no clear error in the district court's finding that the officers observed the items in plain view within two minutes of approaching the truck and questioning its occupants.

## CONCLUSION

¶ 18 For the reasons expressed herein, we hold that Dennis has failed to identify any error in the district court's denial of his motion to suppress. The district court found that the officers had reasonable suspicion to detain Dennis based on a combination of specific and articulable facts, and Dennis has not provided adequate briefing as to why that combination of facts could not support the trial court's finding under the totality of the circumstances of this case. We further note that the district court did not clearly err in finding that less than two minutes elapsed before the officers noticed additional items warranting further investigation. We therefore affirm the denial of Dennis's motion to suppress and remand this matter for further proceedings.

¶ 19 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and PAMELA T. GREENWOOD, Associate Presiding Judge.