2003 UT App 181

STATE of Utah, Plaintiff and Appellee,

v.

Albert GROSSI, Defendant and Appellant.

No. 20020151–CA.

Court of Appeals of Utah.

June 5, 2003.

Heather Johnson, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, BENCH, and GREENWOOD.

## OPINION

GREENWOOD, Judge:

¶ 1 Albert Grossi (Defendant) appeals the trial court's denial of his motion to suppress evidence seized in his home following his

1. "We recite the facts in the light most favorable to the trial court's findings from the suppression hearing held in this case." *State v. Comer,* 2002

arrest. Defendant was convicted for possessing cocaine, a third degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1999). Defendant pleaded guilty but reserved his right to appeal. We reverse.

## BACKGROUND [1]

¶ 2 On November 15, 2000, Officer Knight (Knight) and Officer Beauchaine (Beauchaine) of the Salt Lake City Police Department responded to a call that two women were being assaulted. When Knight arrived at the scene, a woman, Shandra Karren (Karren), ran toward him and told him that Defendant had dragged her friend by the hair into a basement apartment where he was assaulting her. Knight knocked on the apartment door and Defendant appeared at the window, but initially refused to open the door. Knight heard Defendant yell to the alleged victim to tell the officer she was alright. Knight never heard or saw the victim. At some point, Defendant said he would send the victim out the cellar door.

¶ 3 While Knight was negotiating with Defendant to open the door, Beauchaine followed a call from the side of the house, near the cellar door. Defendant eventually exited the apartment, leaving the door "cracked" or "shut a little bit" behind him. Knight patted him down for weapons and found nothing. Beauchaine returned and helped Knight handcuff Defendant, whom he arrested for delaying the investigation. After the officers escorted Defendant to the police vehicle, Beauchaine told Knight he saw the victim exit the apartment through the cellar door, and run "northbound through the backyard."

¶ 4 According to the officers, while Defendant was waiting to be transported to jail, he "kept saying" that he "wanted the [apartment] secure." Knight, refusing to let Defendant do so himself, went to lock the door. Because the lock required a key, and Defendant did not have a key, Knight entered the apartment to find one.

UT App 219, ¶ 2, 51 P.3d 55 (quotations and citation omitted).

¶ 5 After Knight entered the apartment, Karren came out of the bedroom. She told Knight that she was there to get her coat, as she had stayed in the apartment the night before. Knight testified that Karren was acting very nervous. After doing a pat down of Karren, Knight decided to secure the rest of the apartment: "I wanted to make sure no one else was in there for my safety, not to mention whether the victim had come back through the cellar door...." Knight acknowledged on cross examination that his police reports did not mention that he secured the apartment, in part, to check on the victim.

¶ 6 Because the power was out, Knight used his flashlight to search the apartment. When he looked in the bedroom, he saw multiple drug items in plain view. The officers seized the items and Defendant was charged with four drug related counts. Defendant filed a motion to suppress, alleging that the evidence resulted from an illegal search and seizure. The motion was denied. Defendant then pleaded guilty to Possession of a Controlled Substance, reserving his right to appeal the denial of his motion to suppress. *See State v. Sery*, 758 P.2d 935, 938 (Utah Ct.App.1988).

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Defendant claims he did not consent to Knight entering his apartment. "Consent is a factual finding that should be made based on the totality of the circumstances.... [T]he court of appeals may not substitute its judgment as to a factual question unless the district court's finding is clearly erroneous." *State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650.

¶ 8 Defendant also argues that even if Defendant gave Knight his consent to enter the apartment, Knight was not justified in conducting a protective sweep. A trial court's findings of fact are reviewed under the clearly erroneous standard, and "the legal conclusions are reviewed for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts." *State v. Moreno*, 910 P.2d 1245, 1247 (Utah Ct.App.1996) (citing *State v. Pena*, 869 P.2d 932, 935–40 (Utah 1994)).

## ANALYSIS

¶ 9 In this case, there is no dispute that the incriminating evidence was in "plain view." Instead, the issue is whether Knight was lawfully present in Defendant's apartment and, if so, whether the protective sweep exception to the search warrant requirement applies.

"Warrantless searches are unreasonable per se unless they fall within a recognized exception to the warrant requirement of the fourth amendment." Evidence in an officer's plain view is one such exception. However, to establish that the plain view exception applies, the State must demonstrate that: "(1) the officer is lawfully present where the search ... occur[s]; (2) the evidence is in plain view; and (3) the evidence is clearly incriminating."

*State v. Gallegos*, 967 P.2d 973, 976 (Utah Ct.App.1998) (alteration in original) (citations omitted). Defendant argues that because Knight was not lawfully present in the apartment, the plain view exception does not apply. In contrast, the State maintains that Defendant consented to Knight's initial entrance into Defendant's apartment, and once inside, the need for a protective sweep arose.

### I. Consent

¶ 10 The trial court found that Knight entered Defendant's apartment lawfully, based on Defendant's request that his apartment be locked. We affirm the trial court's finding.

Consent is a factual finding that should be made based on the totality of the circumstances. Since a district court is in a unique position to assess the credibility of witnesses and weigh the evidence, the court of appeals may not substitute its judgment as to a factual question unless the district court's finding is clearly erroneous.

*State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650. In this case, there was testimony from the officers that Defendant "kept saying" that he "wanted the [apartment] secure." Additionally, a neighbor testified about an exchange between Defendant and the police.

According to the neighbor, Defendant said, "Let me lock my door." The police responded by saying, "We'll take care of it," to which Defendant responded, "No, let me take care of it [inaudible] couple a minutes." Defendant did not testify at the Motion to Suppress hearing. The trial court held, "in reviewing the testimony of both Officer Knight and [the neighbor], it is clear to the Court that both heard the defendant communicate a need to secure his apartment before he was taken to jail." The trial court therefore found that "Knight lawfully entered the apartment."

¶ 11 Based on testimony from the police and Defendant's neighbor, the trial court found there was substantial and competent evidence that Defendant consented to Knight's entry. Further, the trial court specifically found that Knight's testimony was credible. Accordingly, we uphold the trial court's ruling.

## II. Protective Sweep

¶ 12 Because we affirm the holding that Knight lawfully entered Defendant's apartment, we next consider whether the protective sweep was lawful. Defendant consented only to Knight's entry to lock the apartment, not to search the apartment. Accordingly, if the protective sweep is invalid, Knight was not lawfully present in the room where the evidence was seized, and the motion to suppress should have been granted.

¶ 13 Although we uphold the trial court's ruling on consent, we reverse the trial court's conclusion that "Officer Knight was justified in conducting a security sweep of the apartment because of his concerns that arose when he saw Ms. Karren inside the apartment." Knight's concerns about Karren's presence and nervous demeanor simply do not meet the standard required for a protective sweep.

¶ 14 First, we address the State's argument that this court must apply a reasonableness test when considering whether the warrantless seizure was constitutional. The State relies on language from the Supreme Court in *Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), stating that the " 'central requirement' " of the Fourth Amendment "is one of reasonableness." *Id.* at 330, 121 S.Ct. at 949 (citation omitted). This requirement has been understood to establish rules, such as warrant requirements, to protect privacy interests. *See id.* Nevertheless, the Supreme Court has "made it clear that there are exceptions to the warrant requirement." *Id.* A protective sweep is one such exception.

¶ 15 While reasonableness is indeed a *guiding principle* in search and seizure questions, it is not, as the State suggests, the *test* we apply. "[I]n determining reasonableness, we have balanced the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Maryland v. Buie,* 494 U.S. 325, 331, 110 S.Ct. 1093, 1096, 108 L.Ed.2d 276 (1990). While a search of a home is generally unreasonable absent a warrant based on probable cause, "[t]here are other contexts ... where the public interest is such that neither a warrant nor probable cause is required." *Id.* at 331, 110 S.Ct. at 1097; *see also Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) ("[S]earches conducted outside the judicial process ... are *per se* unreasonable under the Fourth Amendment."); *State v. Gallegos,* 967 P.2d 973, 976 (Utah Ct.App.1998) (" 'Warrantless searches are unreasonable per se unless they fall within a recognized exception to the warrant requirement of the fourth amendment.' " (quoting *State v. Holmes,* 774 P.2d 506, 510 (Utah Ct.App. 1989))).

¶ 16 To determine if the warrantless search in this case was reasonable, we analyze the parameters of the protective sweep exception to the warrant requirement. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."[2] *Buie,* 494 U.S. at 327, 110

2. Defense counsel argues that the protective sweep doctrine does not apply because Defendant's arrest took place outside the apartment, rather than inside. "Although it is true that *Buie* involved an in-home arrest, courts have recognized that the same exigent circumstances pres-

S.Ct. at 1094. An officer must have a "reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *Id.* at 327, 110 S.Ct. at 1095 (alteration in original) (quotations and citations omitted). "[W]hile officers need not have probable cause to believe a dangerous third person is present, the mere possibility of such a presence is not enough." *Hayes v. State,* 106 Nev. 543, 797 P.2d 962, 967 (1990). Defendant argues that Knight did not have specific and articulable grounds to search the apartment, as the protective sweep doctrine requires.

■■■ ¶ 17 The relevant facts are as follows. Defendant, the alleged assaulter, was already in police custody and therefore was not a threat to anyone's safety. While Karren appeared in the apartment unexpectedly, and was nervous, she was not known to be violent, to carry a weapon, or to have access to a weapon. Further, Knight testified that he did not hear any suspicious sounds or see any shadows in the apartment.[3] Defense counsel asked Knight, "After you got [Karren] in custody what fact did you have to lead you to believe that there was someone posing a danger to you or your fellow officers in the inner portion of the apartment?" Knight responded, "The fact was that [Karren] was there and she was acting nervous." "Any other facts?" "None except that I hadn't search[ed] the apartment previously."

■■■ ¶ 18 Based on these facts, the trial court concluded Knight's protective sweep of the apartment was justified. Although we defer to the trial court's findings of fact, the "legal conclusions are reviewed for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts." *State v. Moreno,* 910 P.2d 1245, 1247 (Utah Ct.App.1996) (citing *State v. Pena,* 869 P.2d 932, 935–40 (Utah 1994)). We disagree with the trial court's determination that Knight's concerns about Karren's presence and demeanor, as well as the unknown status of the alleged victim,[4] justified the protective sweep. These facts and rational inferences therefrom are insufficient to justify the warrantless search. Knight did not have "specific and articulable facts which ... reasonably warrant[ed][him] in believing that the area swept harbored an individual posing a danger to [him] or others." *Buie,* 494 U.S. at 327, 110 S.Ct. at 1095 (first alteration in original) (quotations and citations omitted). Contrary to our dissenting colleague's comments, we do not assail the trial court's factual findings, but determine the trial court exceeded its discretion in applying the law to the facts and thus erred in

ent in *Buie* can sometimes accompany an arrest just outside of a residence or other structure." *United States v. Cavely,* 318 F.3d 987, 995 (10th Cir.2003).

3. Additionally, Knight had no knowledge, and there was no indication, that the apartment was the scene of drug production or sales. Courts have upheld protective sweeps where there was knowledge or a clear indication of drug activity, because of the danger surrounding such operations. *See United States v. Cavely,* 318 F.3d 987, 996 (10th Cir.2003) (upholding protective sweep where there was a clear indication that methamphetamine production was ongoing, large amounts of cash and drugs were known to be in the defendant's possession, officers saw defendant carrying an explosive fuel, defendant stated that a friend was inside, and firearms were previously found in the house); *see also United States v. Walsh,* 299 F.3d 729, 734 (8th Cir.2002) (noting risks of methamphetamine production).

4. The State suggests in its brief that the warrantless search was also lawful under the emergency aid doctrine. That doctrine only applies if the following requirements are met:

> (1) Police have an objectively reasonable basis to believe that an emergency exists and believe there is an immediate need for their assistance for the protection of life.
> (2) The search is not primarily motivated by intent to arrest and seize evidence.
> (3) There is some reasonable basis to associate the emergency with the area or place to be searched. That is, there must be a connection with the area to be searched and the emergency.

*Salt Lake City v. Davidson,* 2000 UT App 12, ¶ 12, 994 P.2d 1283 (quotations and citation omitted). Even if the alleged victim had returned, the emergency aid doctrine does not apply. After being told that she jumped a fence and ran away, it would not have been reasonable for Knight to believe that there was "an immediate need for [an officer's] assistance for the protection of life." *Id.* (quotations and citation omitted).

its legal conclusion that these facts justified the search.

## CONCLUSION

¶ 19 We affirm the trial court's finding that Defendant consented to Officer Knight entering his apartment in order to lock it. However, we hold the trial court erred in its conclusion that Knight was justified in conducting a protective sweep of the apartment. Because the protective sweep was not justified, Knight was not lawfully present in the room where the evidence was seized. Therefore, the warrantless search and seizure cannot be upheld on the plain view exception to the search warrant requirement. We reverse the trial court's denial of the motion to suppress, and remand the case for such further proceedings as may now be appropriate.

¶ 20 I CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge.

BENCH, Judge (concurring in part and dissenting in part):

¶ 21 I concur in the main opinion's analysis of the consent issue. The trial court's finding that Defendant consented to Officer Knight's entry into Defendant's apartment is not clearly erroneous. *See State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650. However, I respectfully dissent from the main opinion's conclusion that Officer Knight was not lawfully present in the room where the evidence was seized because "[w]e disagree with the trial court's determination that [the facts] justified the protective sweep."

¶ 22 The main opinion gives only lip service to the appropriate standard of review. In determining whether the facts justified a protective search, we grant the trial court discretion to apply the legal standard to the facts. *See State v. Moreno*, 910 P.2d 1245, 1247 (Utah Ct.App.1996) (citing *State v. Pena*, 869 P.2d 932, 935–40 (Utah 1994)). "Only when the trial judge crosses an existing [legal] fence or when the appellate court feels comfortable in more closely defining the law by fencing off a part of the pasture previously available does the trial judge's decision exceed the broad discretion granted." *Pena*, 869 P.2d at 938. In simply

disagreeing with the trial court, the main opinion fails to recognize that it must conclude that the trial court abused its discretion in a particular way.

¶ 23 "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 1094, 108 L.Ed.2d 276 (1990). According the trial court the proper measure of discretion in the present case, I cannot say that the trial court abused its discretion in concluding that the facts justified a protective search.

¶ 24 Officers Knight and Beauchaine returned to secure, at Defendant's request, what they thought was an empty apartment. Both officers entered through the front door, and Officer Beauchaine went to lock "the back entrance to the apartment." As Officer Knight attempted to lock the front door, Ms. Karren unexpectedly emerged from the bedroom. Surprised to find Karren inside and suspecting that she might be burglarizing the apartment, he detained Karren to find out why she was there. Karren explained that she had returned to retrieve her coat, but "she was acting definitely a lot more nervous than she was when" she reported the assault of her friend. Concerned that Karren may have retrieved a weapon, Officer Knight conducted a quick pat down search. He then conducted a "security check of the residence" out of concern for his own safety and "to make sure no one else was in there," including the victim who could have "come back through the cellar door that was in the rear of the building." Aided by a flashlight, Officer Knight scanned the bedroom from which Karren had emerged and observed "numerous drug items in plain sight."

¶ 25 Given Karren's behavior and the unknown status of the victim, Officer Knight's "cursory visual inspection" of the bedroom where "a person might be hiding" was an appropriate protective search. *Id.* The trial court properly applied the legal standard to the facts in concluding that this protective search was warranted by Officer Knight's

reasonable belief that Defendant's home may have "harbored an individual posing a danger to the officer or others." *Id.*, 110 S.Ct. at 1095.

¶ 26 In my view, the trial court did not abuse its discretion in holding that the protective search was justified by the facts. Officer Knight had Defendant's consent to be in the apartment and performed a justifiable sweep of the bedroom from which Karren unexpectedly emerged and he saw the contraband in plain view. The trial court therefore properly denied Defendant's motion to suppress the evidence.

¶ 27 I would affirm Defendant's conviction.