2006 UT App 339

STATE of Utah, Plaintiff and Appellee,

v.

Casper Michael DUNKEL III, Defendant and Appellant.

No. 20040875–CA.

Court of Appeals of Utah.

Aug. 10, 2006.

John T. Caine, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff, Attorney General, and Christine F. Soltis, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges GREENWOOD, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 Casper Michael Dunkel III appeals from a conviction based on his guilty plea to the crime of operation of a clandestine laboratory, a first degree felony. *See* Utah Code Ann. §§ 58–37d–4, –5 (2002). Dunkel raises concerns about the validity of a traffic stop and the scope of his consent to the ensuing search of his vehicle. We affirm.

## BACKGROUND

¶ 2 On the evening of October 11, 2002, Weber County Deputy Sheriff Steve Haney stopped Dunkel for an apparent traffic violation. While requesting Dunkel's driver's license and registration, Deputy Haney—a drug recognition expert—thought Dunkel appeared lethargic, had droopy eyes, and seemed disoriented. Absent the scent of alcohol, Deputy Haney was suspicious that Dunkel was under the influence of some type of narcotic. When questioned about drug use, Dunkel denied recently consuming any illegal drugs, admitting only to taking his prescription Xanax earlier in the day. Deputy Haney had Dunkel exit the car to test his sobriety, and Dunkel failed the various field sobriety tests Deputy Haney administered. Deputy Haney then asked Dunkel for permission to search the car for drugs, and Dunkel consented.

¶ 3 Deputy Haney searched the car from bumper to bumper, including the trunk. When Deputy Haney opened the trunk, with keys he had retrieved from the ignition, he found it held a "big blue storage container." This discovery prompted Deputy Haney to ask, "What do we have here?" or "What's in this?" And Dunkel replied to the questions with something along the lines of "I don't know" or "I'm not sure. It's a friend of mine's and I can't give you permission to search it." Deputy Haney proceeded to open the blue container and found that it held equipment and other objects typically associated with the operation of a methamphetamine laboratory. Dunkel was then placed under arrest.

¶ 4 Charged with possession of clandestine laboratory precursors and equipment, Dunkel filed a motion to suppress the evidence found in the container. Dunkel argued that the search of the container violated his Fourth Amendment rights. He contended that the statements he made to Deputy Haney when asked about the container in the trunk either expressly revoked or limited his consent to the search of the container.

¶ 5 The trial court denied Dunkel's motion. It found that Dunkel's statements to Deputy

Haney about the container manifested that Dunkel did not own the container and that he did not have the authority from its owner to consent to a search of it. The court concluded that Dunkel's statements "did not revoke his consent to search the vehicle" and that Dunkel did not have standing to seek to suppress the contents of the container because he claimed he did not own the container. Dunkel subsequently entered a conditional guilty plea, preserving his right to appeal the trial court's ruling on the motion to suppress, and Dunkel was sentenced to a term of five years to life in the Utah State Prison.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Dunkel appeals the trial court's denial of his motion to suppress. On such an appeal, "[w]e review the trial court['s] factual findings underlying the denial of a motion to suppress for clear error, while conclusions of law are reviewed for correctness." *State v. Galli*, 967 P.2d 930, 933 (Utah 1998).

¶ 7 Dunkel also argues that his trial counsel was ineffective—or alternatively, that the trial court committed plain error—by failing to question the legality of the original traffic stop and, thus, that we should now consider his argument concerning the traffic stop. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. Likewise, "[p]lain error is a question of law reviewed for correctness." *State v. Smit*, 2004 UT App 222, ¶ 7, 95 P.3d 1203.

## ANALYSIS

### I. Validity of the Traffic Stop

¶ 8 We first address Dunkel's argument that the initial traffic stop was itself illegal. Dunkel asserts that Deputy Haney lacked a reasonable articulable suspicion to justify the stop. The State contends, however, that we cannot consider Dunkel's challenge to the traffic stop because he did not specifically raise the issue below or preserve it for appeal by the terms of his conditional plea agreement.[1] Nevertheless, even assuming that Dunkel may now properly raise this issue through a claim of ineffective assistance of counsel or plain error, his argument is without merit.

¶ 9 It is well settled that if a traffic violation is committed in an officer's presence, the officer has not only reasonable suspicion, but probable cause to stop the vehicle. *See, e.g., State v. Preece*, 971 P.2d 1, 5 (Utah Ct.App.1998). Although Deputy Haney could not clearly remember while testifying whether Dunkel had run a stop sign or failed to yield the right of way after stopping at the stop sign, it is clear that Dunkel committed some sort of traffic violation in Deputy Haney's presence. And Dunkel's testimony at the suppression hearing that he apologized to Deputy Haney corroborates Deputy Haney's report that a traffic violation had been committed.

¶ 10 Consequently, Dunkel's assertion that his counsel was ineffective for failing to pursue a challenge to the traffic stop is without merit because such a challenge would have proved futile. *See Codianna v. Morris*, 660 P.2d 1101, 1109 (Utah 1983) (" '[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance.' ") (citation omitted). For the same reason, the trial court's failure to address the constitutionality of the traffic stop was not plain error. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993) (stating that the first step in establishing plain error is to show that "[a]n error exists").

### II. Denial of the Motion to Suppress

¶ 11 Dunkel does not dispute that his initial consent to the search of his car was voluntary. Instead, he claims that his subsequent statements to Deputy Haney about the container in the trunk either limited the scope of the vehicle search to which he had

---

1. The State asserts that Dunkel's conditional plea agreement only reserved his right to appeal the trial court's denial of his motion to suppress on the specific grounds he raised below, which did not include any assertion that the traffic stop itself was illegal. In the State's view, Dunkel only challenged the legality of the search of the blue container found in the trunk of his car.

consented or served to withdraw his prior consent. Dunkel thus argues that Deputy Haney's search of the container was illegal and his motion to suppress should have been granted. Without reaching the issue, we assume for purposes of this appeal that Dunkel had proper standing to challenge the search of the container in his trunk. We nonetheless conclude that Dunkel's statements did not alter the scope of his consent to the search or effectively withdraw his prior consent, and thus, his motion to suppress was properly denied.

■ ¶ 12 Consent to a police search is, of course, an exception to the warrant requirement of the Fourth Amendment. *See, e.g., State v. Dunn*, 850 P.2d 1201, 1217–18 (Utah 1993) ("One of the narrow exceptions to the warrant requirement is brought into play when a defendant voluntarily consents to a search, thereby waiving the constitutional requirement of a warrant."). *Accord Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). It is also well settled that a person may limit the scope of the search to which he consents. *See Florida v. Jimeno*, 500 U.S. 248, 252, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). But where, as here, the person's initial consent to the search is reasonably understood to give general and unqualified permission to search a vehicle, such permission "usually extends to [the vehicle's] entirety, absent objection or limitation by the driver." *United States v. Gregoire*, 425 F.3d 872, 880 (10th Cir.2005).[2]

■ ¶ 13 In addition, a person's general "[c]onsent to search for specific items includes consent to search those areas or containers that might reasonably contain those items." *United States v. Kimoana*, 383 F.3d 1215, 1223 (10th Cir.2004). *See also Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801 (concluding that because "the scope of [the] search is generally defined by its expressed object,"

general consent to search for narcotics authorizes search "beyond the surfaces of the car's interior" and includes "containers within that car which might bear drugs"). Thus, general consent to search a vehicle for drugs extends the scope of the search to the trunk and most containers found therein that could contain narcotics. *See State v. Castner*, 825 P.2d 699, 705 (Utah Ct.App.1992) (concluding that because the defendant gave general consent to search, "the scope of the consent given extended to the contents of the containers found in the interior of the vehicle and the trunk").

¶ 14 Courts have almost universally acknowledged, however, that even general consent, once given, "may be withdrawn or limited at any time prior to the completion of the search."[3] 4 Wayne R. LaFave, *Search and Seizure* § 8.1(c), at 45–46 (4th ed.2004). *See, e.g., Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir.1999); *United States v. Ho*, 94 F.3d 932, 934 (5th Cir.1996); *United States v. Jachimko*, 19 F.3d 296, 299 (7th Cir.1994); *Baxter v. State*, 77 P.3d 19, 25 (Alaska Ct. App.2003); *Burton v. United States*, 657 A.2d 741, 746 (D.C.1994). Yet, in order to effectively withdraw a valid consent to a search—or to subsequently place limitations on the scope of the search—courts have generally required that a person do so by "an unequivocal act or statement." *United States v. Ross*, 263 F.3d 844, 846 (8th Cir. 2001) (internal quotations and citation omitted). *See, e.g., United States v. Miner*, 484 F.2d 1075, 1076 (9th Cir.1973) (finding withdrawal of implied consent where prospective airline passenger balked at search of luggage by saying, " 'No, it's personal' "); *United States v. Dichiarinte*, 445 F.2d 126, 128–30 (7th Cir.1971) (suggesting withdrawal of consent occurred when defendant exclaimed, " 'The search is over. I am calling off the search' "); *United States v. Bily*, 406 F.Supp.

---

2. The focus of judicial inquiry into the scope of a person's consent to a search is " 'objective' reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). The objective reasonableness standard means that we ask, "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.*

3. The United States Supreme Court, however, is one court that has yet to rule definitively on the matter. *See United States v. Pelle*, Criminal No. 05–407(JBS), 2006 WL 436920, at *4, 2006 U.S. Dist. LEXIS 9703, at *13 (D.N.J. Feb. 17, 2006) (noting that "[t]he United States Supreme Court is yet to consider whether a defendant who has consented to a search may subsequently withdraw that consent").

726, 728–29 (E.D.Pa.1975) (concluding consent was withdrawn when defendant stated, "That's enough. I want you to stop"). In other words, as one court has succinctly stated, courts have required that "conduct withdrawing consent must be an act clearly inconsistent with the apparent consent to a search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both." *Burton,* 657 A.2d at 746–47 (footnotes omitted). *See, e.g., United States v. Gray,* 369 F.3d 1024, 1026 (8th Cir.2004) ("Withdrawal of consent need not be effectuated through particular 'magic words,' but an intent to withdraw consent must be made by unequivocal act or statement."); *United States v. Alfaro,* 935 F.2d 64, 65–67 (5th Cir.1991) (concluding defendant's conduct "f[ell] far short of an unequivocal act or statement of withdrawal, something found in most withdrawal of consent cases"); *United States v. Cadieux,* 324 F.Supp.2d 168, 170 (D.Me.2004) ("Although consent to search, once given, may be withdrawn, the law generally requires that the withdrawal of consent amount to an 'unequivocal act or statement of withdrawal.' ") (citations omitted).

¶ 15 Key to the case before us is the proposition that follows from the one just discussed: Ambiguous actions or statements do not operate to effectively withdraw an individual's prior valid consent to a search or act to place limits on the scope of an ongoing consensual search. *See, e.g., United States v. Sanders,* 424 F.3d 768, 774 (8th Cir.2005) ("If equivocal, a defendant's attempt to withdraw consent is ineffective and police may reasonably continue their search pursuant to the initial grant of authority."); *Ross,* 263 F.3d at 846 (holding that the defendant's "expressions of impatience did not amount to an unequivocal act or statement of withdrawal indicating an intent to revoke his consent") (quotations and citations omitted); *United States v. Brown,* 884 F.2d 1309, 1312 (9th Cir.1989) (concluding that "[a]ny reluctance [the defendant] showed in admitting [that] he was carrying the keys to his luggage was not enough to indicate he had withdrawn his [prior] unambiguous statement of consent"), *cert. denied,* 493 U.S. 1025, 110 S.Ct. 732, 107 L.Ed.2d 750 (1990);

*United States v. Hardin,* 710 F.2d 1231, 1236–37 (7th Cir.) (determining that a defendant's ultimately cooperative actions were "at best ambiguous," making them "wholly ineffective to communicate an intention to rescind or narrow his consent"), *cert. denied,* 464 U.S. 918, 104 S.Ct. 286, 78 L.Ed.2d 263 (1983); *Carter v. State,* 762 So.2d 1024, 1026 (Fla.Dist.Ct.App.2000) (concluding consent not effectively withdrawn because "defendant never in words or substance told the police to stay out of his room or otherwise conveyed the idea that he was revoking his consent"), *review denied,* 786 So.2d 1183 (Fla.2001); *State v. Morocco,* 99 N.C.App. 421, 393 S.E.2d 545, 550 (1990) (affirming that defendant's "ambiguous statement" that "the bag contained some nude photographs of his wife" did not withdraw his prior consent to search the bag).

¶ 16 Applying the foregoing analysis to Dunkel's contention that he effectively withdrew or limited the scope of his consent prior to the search of the container, we see no error in the trial court's decision. Here, Dunkel's statements to Deputy Haney about the container when it was discovered in the trunk of the car are ambiguous at best. His statements do not clearly indicate what exactly Dunkel intended to convey to Deputy Haney by telling him that, because he did not know what was in the container and that the container belonged to a friend, he could not give Deputy Haney permission to search the container. Indeed, Dunkel's statements could be reasonably understood to have conveyed a couple of different things to Deputy Haney. For example, Dunkel's statements could be reasonably understood to convey Dunkel's earnest concern that his friend's personal property be protected from a police search since the container was entrusted to his care for safe-keeping. Dunkel's statements could also be viewed as more of a warning to Deputy Haney that if he opted to open the container, he would do so knowing that he did not have the friend's permission, at least by way of Dunkel, to do so. It is also reasonable to conclude that Dunkel was attempting to distance himself from, disclaim ownership of, and deny having any knowledge about whatever Deputy Haney might

find inside the container in case it carried some sort of incriminating material.

¶17 Given the ambiguous nature of Dunkel's statements, it was objectively reasonable for Deputy Haney to proceed with the search of the container based on Dunkel's initial general consent to the search of his car for drugs. Accordingly, the trial court correctly concluded that Dunkel's statements did not clearly convey to Deputy Haney that he was withdrawing his consent, nor did they clearly convey to Deputy Haney that the extent of his consent now excluded the container.

## CONCLUSION

¶18 Dunkel's trial counsel was not ineffective, nor did the trial court commit plain error, for failing to question the legality of the initial traffic stop. The traffic stop was justified by Dunkel's traffic violation. Moreover, the trial court correctly determined that Deputy Haney's search of Dunkel's car for narcotics, including the search of the container in the trunk, was performed legally because Dunkel had given his general consent to the search and he did not withdraw that consent or alter the scope of his consent through statements he subsequently made during the search. The trial court's ruling is accordingly affirmed.

¶19 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and WILLIAM A. THORNE JR., Judge.