2010 UT App 33

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Russell E. HURT, Defendant and Appellant.**

No. 20080662–CA.

Court of Appeals of Utah.

Feb. 11, 2010.

tion to set aside the judgment and motion for joinder.

Dana M. Facemyer, Provo, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Marian Decker, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and BENCH.[1]

## OPINION

THORNE, Judge:

¶ 1 Russell E. Hurt appeals from his conviction of possession of a controlled substance, a third degree felony, see Utah Code Ann. § 58–37–8(2) (Supp.2009). We affirm.

## BACKGROUND

¶ 2 Hurt was arrested on August 20, 2007, when a Utah Highway Patrol officer, Trooper David Wurtz, discovered Hurt to be in possession of methamphetamine and related paraphernalia during a traffic stop. The State charged Hurt with drug possession and paraphernalia offenses, and Hurt filed a motion to suppress the evidence against him. Hurt's motion asserted that Wurtz impermissibly "ordered [Hurt] to perform a self 'pat down' which is a force[d] [*Terry* ] frisk." *See generally Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The State deferred its briefing on Hurt's motion pending completion of a suppression hearing.

¶ 3 The district court held a suppression hearing, at which it made extensive factual findings pertaining to the traffic stop. Those factual findings were later set out in the district court's written order, and we summarize them here. At about 7:30 p.m. on August 20, Wurtz was patrolling in Wasatch County when he observed a vehicle exceeding the speed limit. Wurtz stopped the vehicle and approached it from the driver's side. Grant Black was the driver of the stopped vehicle, and Hurt was a passenger. Upon running a warrants check on Black, Wurtz was informed that Black had an arrest warrant and a history of involvement with methamphetamine. Wurtz arrested Black on the warrant.

¶ 4 Wurtz then spoke with Hurt about the possibility of Hurt driving Black's vehicle away from the scene, but Hurt did not have a valid driver license. At this time, Wurtz asked Hurt to step out of the vehicle so that Wurtz and another trooper could search the vehicle incident to Black's arrest. Hurt complied.

¶ 5 Wurtz asked Hurt if he had any weapons on him, and Hurt replied that he did not. Wurtz then asked Hurt to turn out his pockets and produce and open an eyeglass case, which Hurt did. The eyeglass case con-

1. Judge Russell W. Bench heard this case as a regular member of the Utah Court of Appeals prior to his retirement on January 1, 2010. However, his vote on this decision occurred after January 1, 2010, and hence he is designated herein as a Senior Judge. *See* Utah Code Ann. § 78A–3–103(2) (2008); Sup.Ct. R. of Prof'l Practice 11–201(6).

tained contraband. At no time did Wurtz physically frisk Hurt.

¶ 6 After the suppression hearing, the State filed an opposition brief responding to Hurt's motion and the district court's factual findings. The State's brief argued that Wurtz properly ordered Hurt out of the vehicle, that Hurt consented to the search of the eyeglass case by complying when Wurtz asked him to take the case out of his pocket and open it, and that Wurtz's detention of Hurt was reasonable under the circumstances of the traffic stop.

¶ 7 The district court issued a written order denying Hurt's motion. The order recited the following conclusions of law:

1. Once a motor vehicle has been lawfully detained for a traffic violation, the peace officer may order the driver and all passengers out of the vehicle without violating the Fourth Amendment's proscription against unreasonable searches. . . .

2. That is what occurred in this case. Once the driver was placed into custody, [Hurt] was asked to step out of the vehicle. This was necessary in order for the trooper to effect a search of the passenger apart from the vehicle incident to the driver's arrest.

3. Having considered the testimony and having made Findings of Fact based on that testimony, I am satisfied that the evidence seized by Trooper Wurtz was seized pursuant to the consent of [Hurt].

4. I am not persuaded that the officer commanded [Hurt] to produce the eyeglass case in which the contraband was discovered. There was no show of force used by the officer; there was an absence of a claim of authority to search, [Hurt] cooperated with the request of the officer, and there was an absence of deception or trick.

Based on its findings and conclusions, the district court's order denied Hurt's motion to suppress. Hurt appeals.

## ISSUE AND STANDARD OF REVIEW

■■ ¶ 8 Hurt argues, generally, that his detention and removal from the stopped vehicle, as well as Wurtz's actions leading to the discovery of contraband in Hurt's eyeglass case, violated his Fourth Amendment rights against unreasonable search and seizure, *see* U.S. Const. amend. IV. "We review the legality of a search and seizure for correctness, giving no deference to the decision of the trial court." *State v. Dennis,* 2007 UT App 266, ¶ 7, 167 P.3d 528 (internal quotation marks omitted); *see also State v. Brake,* 2004 UT 95, ¶ 15, 103 P.3d 699 ("We abandon the standard which extended 'some deference' to the application of law to the underlying factual findings in search and seizure cases in favor of non-deferential review.").

## ANALYSIS

### I. Hurt Was Not Unlawfully Detained

■■ ¶ 9 Hurt first argues that his detention was impermissible because Wurtz had no reasonable suspicion that Hurt had committed or was about to commit a crime. Specifically, Hurt argues that his case is analogous to *State v. Baker,* 2008 UT App 115, 182 P.3d 935, *cert. granted,* 199 P.3d 367 (Utah 2008), in which this court reversed the criminal conviction of a vehicle passenger who was detained following the arrest of the driver. We are unpersuaded that Wurtz impermissibly detained Hurt during the course of the traffic stop under either *Baker* or recent United States Supreme Court case law on the rights of vehicle passengers during traffic stops.

■■ ¶ 10 As a vehicle passenger, Hurt was detained from the moment that Wurtz initiated the traffic stop. *See Brendlin v. California,* 551 U.S. 249, 257–58, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Such an incidental detention of a vehicle passenger "ordinarily continues, and remains reasonable, for the duration of the stop." *Arizona v. Johnson,* —— U.S. ——, ——, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009). There are certainly aspects of the stop in this case that might lead to the conclusion that its duration was outside that of the ordinary traffic stop— most notably, the arrest of the driver. *See, e.g., Baker,* 2008 UT App 115, ¶ 25, 182 P.3d 935 (observing that upon the driver's arrest, "a brief traffic stop had turned into an indefinite detention" (Thorne, J., concurring)); *see also, e.g., Brendlin,* 551 U.S. at 255, 127 S.Ct.

2400 ("[A] traffic stop entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention quite brief.'"). However, Hurt does not argue that the circumstances of this particular stop place it outside the general rule that incidental passenger detentions are reasonable, and therefore permissible, for the otherwise lawful duration of the stop.[2]

¶ 11 Rather, Hurt argues that his case is analogous to *Baker*. In *Baker*, as in this case, police officers continued to detain a vehicle's passengers after the arrest of the driver. *See* 2008 UT App 115, ¶¶ 12–13, 182 P.3d 935. However, in *Baker* the passengers were subjected to a substantial period of detention after the driver's arrest for the sole purpose of subjecting them to screening by a drug-sniffing dog. *See id.* ¶¶ 3–6. The officers in *Baker* did not have a reasonable suspicion that the passengers were involved with illegal drugs. *See id.* ¶ 13. This court determined that such a detention of the passengers after the driver's arrest, for reasons unrelated to the stop and unsupported by reasonable suspicion of wrongdoing, was impermissible. *See id.*

¶ 12 There are, however, several aspects of Hurt's detention that distinguish it from *Baker*. Here, Hurt's detention was entirely incidental to the detention and arrest of the driver. Police interaction with Hurt was limited to inquiring about Hurt's ability to legally drive the vehicle away from the scene and removing him from the vehicle in order to search it incident to the driver's arrest. Nor is there any suggestion of an appreciable delay between the driver's arrest and Wurtz's discovery of the contents of Hurt's pockets and eyeglass case. By contrast, in *Baker*, ten to fifteen minutes passed between the driver's arrest and the drug dog's alert, *see id.* ¶ 26 (Thorne, J., concurring), and the passengers had become investigatory targets on grounds independent from those justifying detention of the driver, *see id.* ¶ 28 ("[T]he driver's detention had effectively become permanent, and the investigatory scope of the detention had widened to include Baker as a target." (Thorne, J., concurring)). Because Hurt's detention remained incidental to the driver's detention and was not appreciably extended by Wurtz's actions, we conclude that *Baker* does not require reversal in this situation.[3]

## II. Consent Search Was Not Unlawful

¶ 13 Hurt next challenges the constitutionality of Wurtz's actions that resulted in the discovery of the contents of Hurt's eyeglass case. Hurt appears to characterize Wurtz's actions as a "weapons frisk" requiring reasonable suspicion that Wurtz was armed and dangerous. *See generally State v. Warren*, 2003 UT 36, ¶ 13, 78 P.3d 590. Hurt argues that Wurtz had no such reasonable suspicion and therefore violated the Fourth Amendment when he frisked Hurt for weapons.

¶ 14 The district court rejected Hurt's characterization of events, expressly finding that "[a]t no time did Trooper Wurtz execute a frisk of [Hurt's] person." Instead, the district court found that Wurtz asked Hurt to turn out his pockets, produce the eyeglass

2. Although the duration of a passenger's detention is ordinarily deemed reasonable for the lawful duration of the driver's detention, officers may still expand the scope of any detention beyond that which justified the stop in the first place. *See, e.g., State v. Vialpando*, 2004 UT App 95, ¶ 10 n. 2, 89 P.3d 209 ("It is understood, of course, that any detention, regardless of the justification, must be limited in scope and duration to the circumstances that prompted the detention."). However, Hurt does not argue that Wurtz's actions preceding the discovery of the contraband exceeded the proper scope of Hurt's detention incident to the detention of the driver. Thus, we do not consider this possibility.

3. Although Hurt does not raise the issue in his appellate brief, the State's brief raises the poten-

tial applicability of the United States Supreme Court's recent decision in *Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), to this case. *Gant*, which was issued after the events of this case, held that police officers may search the interior of a vehicle incident to the driver's arrest only when the driver has continued physical access to the interior of the vehicle or there is reason to believe that the vehicle contains evidence of the offense for which the driver was arrested. *See id.* at 1714 (limiting *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). Because we uphold Hurt's conviction on other grounds as discussed in the body of this opinion, we decline to address the State's *Gant* argument.

case, and open it, and concluded that these events occurred "pursuant to the consent of [Hurt]." The district court further concluded

> I am not persuaded that the officer commanded [Hurt] to produce the eyeglass case in which the contraband was discovered. There was no show of force used by the officer; there was an absence of a claim of authority to search, [Hurt] cooperated with the request of the officer, and there was an absence of deception or trick.

*See generally State v. Bisner,* 2001 UT 99, ¶ 47, 37 P.3d 1073 (listing factors indicating a lack of duress or coercion by officer obtaining consent to search).[4]

▆▆▆▆ ¶ 15 Regardless of whether Wurtz's actions here constitute a frisk,[5] it is determinative that the district court found as a factual matter that Hurt consented to the search of the eyeglass case. Consent to a police search is an exception to the warrant requirement of the Fourth Amendment. *See State v. Dunkel,* 2006 UT App 339, ¶ 12, 143 P.3d 290; *see also State v. Dunn,* 850 P.2d 1201, 1217–18 (Utah 1993) ("One of the narrow exceptions to the warrant requirement is brought into play when a defendant voluntarily consents to a search, thereby waiving the constitutional requirement of a warrant."). "Consent is a factual finding that should be made based on the totality of the circumstances." *State v. Grossi,* 2003 UT App 181, ¶ 10, 72 P.3d 686 (internal quotation marks omitted). " 'Since a district court is in a unique position to assess the credibility of witnesses and weigh the evidence, the court of appeals may not substitute its judgment as to a factual question unless the district court's finding is clearly erroneous.' " *Id.* (quoting *State v. Hansen,* 2002 UT 125, ¶ 48, 63 P.3d 650).

¶ 16 Here, Hurt makes no effort to demonstrate that the district court's consent finding is clearly erroneous by marshaling the evidence against it. *See generally* Utah R.App.

P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."); *State v. Chavez–Espinoza,* 2008 UT App 191, ¶ 7, 186 P.3d 1023 ("[I]n order to challenge a trial court's factual findings, a party must marshal all the evidence in favor of the very findings they oppose on appeal."), *cert. denied,* 199 P.3d 367 (Utah 2008). In fact, the State correctly asserts that Hurt's appellate brief fails to even acknowledge the district court's reliance on Hurt's consent, much less present any reasoned argument or authority against it. *See generally Chavez–Espinoza,* 2008 UT App 191, ¶¶ 9–26, 186 P.3d 1023 (discussing requirements for argument section of appellate briefs). In light of Hurt's failure to factually or legally challenge the district court's consent ruling, we will not disturb the district court's factual finding that Hurt consensually produced and opened the eyeglass case, or its legal conclusion that the search was, therefore, lawful.

## CONCLUSION

¶ 17 Hurt has not demonstrated a violation of his Fourth Amendment rights stemming from the traffic stop and resulting discovery of contraband in his eyeglass case. Accordingly, we will not disturb the district court's ruling denying Hurt's motion to suppress, and we affirm Hurt's conviction.

¶ 18 I CONCUR: RUSSELL W. BENCH, Senior Judge.

DAVIS, Presiding Judge (concurring in the result):

¶ 19 I agree with the majority opinion that Hurt failed to challenge—either legally or factually—the district court's ruling that he consented to the search conducted by Officer Wurtz. Accordingly, I concur in the result reached in the case. However, I write sepa-

---

4. We cite to *State v. Bisner,* 2001 UT 99, 37 P.3d 1073, because it appears to be the source of the factors enumerated by the district court. *See id.* ¶ 47. We do note, however, that the *Bisner* factors address only "whether consent to a warrantless search was given *voluntarily,*" *see id.* (emphasis added), not whether consent has been given in the first place.

5. Case law suggests that an officer's command that a person empty or remove objects from a pocket constitutes a search requiring probable cause, even if the officer could pat down the same pocket based only on reasonable suspicion. *See State v. Lafond,* 2003 UT App 101, ¶ 27 n. 12, 68 P.3d 1043.

rately because had the adequacy of Hurt's consent been properly pursued on appeal, I would likely reach a different result.

¶ 20 It is well settled that "[w]hile the Constitution prohibits unreasonable searches and seizures, it does not expressly preclude using evidence obtained in violation of its commands." *State v. Hansen*, 2002 UT 125, ¶ 47, 63 P.3d 650 (internal quotation marks omitted). Accordingly, even if police illegally detain a defendant—which we have determined did not occur in this case—"evidence obtained during a subsequent search may nevertheless be admitted if the person gave valid consent to the search." *Id.* In other words, even had we concluded that Hurt was illegally seized after the driver was arrested, *see generally State v. Baker*, 2008 UT App 115, ¶ 13, 182 P.3d 935, *cert. granted*, 199 P.3d 367 (Utah 2008), evidence of the contents of his eyeglass case "may [have] be[en] admitted if [he] gave valid consent to the search." *Hansen*, 2002 UT 125, ¶ 47, 63 P.3d 650.

¶ 21 A person validly consents to the search of their property if "(1) [t]he consent was given voluntarily, and (2) the consent was not obtained by police exploitation of the prior illegality." *Id.* (alteration in original) (internal quotation marks omitted). While the determination of whether a person consented to a search presents a factual question, the voluntariness of that consent "is a legal conclusion, which is reviewed for correctness." *Id.* ¶ 51. "Consent is not voluntary if it is obtained as 'the product of duress or coercion, express or implied.'" *State v. Bisner*, 2001 UT 99, ¶ 47, 37 P.3d 1073 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

Factors indicating a lack of duress or coercion, which should be assessed in the totality of all the surrounding circumstances, include, "1) the absence of a claim of authority to search by the officers; 2) the absence of an exhibition of force by the officers; 3) a mere request to search; 4) cooperation by the owner of the [property]; and 5) the absence of deception or trick on the part of the officer."

*Id.* (alteration in original) (additional quotation marks omitted) (quoting *State v. Whittenback*, 621 P.2d 103, 106 (Utah 1980)). Pursuant to these factors, the district court concluded, as a matter of law, that Hurt had validly consented to the search.[1] The district also made factual findings supporting this conclusion—which findings we must accept because Hurt has not properly challenged them on appeal, *see State v. Widdison*, 2001 UT 60, ¶ 60, 28 P.3d 1278 (setting forth marshaling requirements). However, for the following reasons, I remain unconvinced that under the circumstances of this case, Hurt voluntarily consented to the search.

¶ 22 First, at the time Hurt purportedly consented to the search, the driver of the car in which he was a passenger had been arrested on outstanding warrants and Hurt had been *ordered* to exit the car so that the car could be searched incident to that arrest. Second, three other officers besides Officer Wurtz arrived separately and were present at the scene while Hurt was being searched. Third, although not required, it does not appear that Officer Wurtz informed Hurt that he could refuse consent, *see generally Hansen*, 2002 UT 125, ¶ 59 n. 6, 63 P.3d 650 (noting that "officer[s] who include[ ] such a warning in [their] request for consent undoubtedly present[ ] a stronger case for a finding of voluntariness in a suppression hearing" (alterations in original) (internal quotation marks omitted)). Finally, when Officer Wurtz inquired about Hurt driving the car home, Hurt acknowledged that he did not have a driver license in his possession; a subsequent license check confirmed that Hurt did not have a valid license and, therefore, could not legally drive the car from the scene.[2] Had the issue of consent

---

1. As the majority correctly points out, "Hurt's appellate brief fails to even acknowledge the district court's [legal conclusion that Hurt consented to the search], much less present any reasoned argument or authority against it." *Supra* ¶ 16.

2. The trial court also found that Hurt had his dog in the car at the time of the stop and that the dog had been retrieved by officers at the scene. It is unclear from the briefing whether and when the dog had been returned to Hurt. While certainly not dispositive, whether Hurt's personal property had been returned would factor into the volun-

been properly pursued on appeal, I would have concluded that these facts, when considered under a totality of the circumstances, *see Bisner*, 2001 UT 99, ¶ 47, 37 P.3d 1073, implied to Hurt that he was not free to refuse consent to the search of his eyeglass

case and, therefore, his consent was not voluntary.

---

tariness of his consent, *cf. State v. Hansen*, 2002 UT 125, ¶ 40, 63 P.3d 650 (" '[A]n encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him.' " (quoting *United States v. Gregory*, 79 F.3d 973, 979 (10th Cir.1996))).