DAVIS, Judge
(dissenting):
T 37 I respectfully dissent from the majority opinion because I believe it is inconsistent with our supreme court's holding in Uzelac v. *609 Thurgood (In re Estate of S.T.T.), 2006 UT 46, 144 P.3d 1083. Accordingly, I would consider Mother's other arguments on appeal and ultimately affirm the trial court's award of grandparent visitation.
I. Constitutionality of the Grandparent Visitation Statute
38 The Uzelac court explained that the Grandparent Visitation Statute is constitutional as applied where "the grandparents ... have clearly and convincingly rebutted the [parental] presumption ... [,] the district court ... [has] found that grandparent visitation [is] in the child's best interests," and the trial court's "determination [is] accompanied by sufficient findings of fact to justify state interference." Id. $88. Although the Uzelac court never explicitly discussed the appropriate level of serutiny to apply in grandparent visitation cases, it is clear from the parties' briefs in that case that the seruti-ny issue was raised and that the supreme court would have been cognizant of it. Brief for Appellee at 26-27, Uzelac, 2006 UT 46, 144 P.3d 1083; Reply Brief for Appellant at 5-13, Uzelaoc, 2006 UT 46, 144 P.3d 1083. Thus, it appears that, like the Supreme Court in Troxel, our supreme court consciously declined to explicitly identify the appropriate level of scrutiny. See Troxel v. Granville, 530 U.S. 57, 80, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (Thomas, J., concurring in the judgment).
139 The Uzelac court did examine the Grandparent Visitation Statute in detail and gave extensive instructions regarding how it should be constitutionally applied. For example, the court explicitly limited the applicability of two particular factors-grandparent fitness and best interests-because of their tendency to "allow[ ] a judge to super-cede a parent's decisions based solely on a disagreement between the parent and the judge." Uzelac, 2006 UT 46, 133, 144 P.3d 1083. The court further clarified that in order to withstand constitutional scrutiny, the parental presumption must be rebutted by clear and convincing evidence. Id. However, the court went on to explain that the statute provides "several means by which a grandparent can rebut the parental presumption" and explained that the Grandparent Visitation Statute withstood constitutional scrutiny by "ensuring that courts give 'special weight' to the decisions of fit parents." Id. 41 34-35. Although the Uzelac court suggested that "the presumption is most clearly rebutted when the court finds the existence of several relevant factors," it did not identify any particular number of factors that must be established and made no suggestion that harm or parental fitness should be elevated over any of the other factors.[5] Id. 184; see also id. 1 24 (pointing out that Troxel 's "plurality decision does not impose the requirement that the parental presumption be rebutted by a showing of harm to the child" and "specifically refused to determine whether the Due Process Clause requires a showing of harm or potential harm to the child as a condition precedent to granting visitation" (citing Troxel, 580 U.S. at 78, 120 S.Ct. 2054 (plurality opinion))).
4 40 Thus, even if we assume our supreme court did not, in effect, apply strict serutiny, I do not believe we should employ a higher level of serutiny than that employed by our supreme court or read additional constitutional requirements into a statute that our supreme court has thoroughly analyzed.[6] *610 Thus, I would conclude that by determining that Grandparents had clearly and convincingly rebutted the parental presumption by means of a sufficient combination of the statutory factors, the trial court applied the Grandparent Visitation Statute in a manner that adequately protected Mother's constitutional parental rights. Accordingly, I would address Mother's other arguments on appeal.
II. Factual Findings
1 41 Mother first challenges several of the trial court's factual findings. A trial court's findings of fact are reviewed for clear error. Houskeeper v. State, 2008 UT 78, 118, 197 P.3d 636. Specifically, Mother maintains that there was insufficient evidence to support the court's findings that Mother "believed the visits [with Grandparents] went well" during the two and a half months following Father's death; that Mother "denied any unsupervised visitation and contact" after July 24, 2009; that Mother "testified that she denied visitation only after [Grandparents] wanted too much"; and that "[flinancial matters and [Child's maternal grandmoth-ei's]l involvement may have contributed to the cessation of contact between [Grandparents] and [Child]." I do not agree with Mother that these findings were unsupported by the evidence.
1 42 Mother asserts that because her relationship with Grandparents was not ideal during the two and a half months immediately following Father's death, the trial court erred in finding that Mother believed the visits with Grandparents went well during that period. However, read in context, that finding appears to relate primarily to Mother's feelings about the visits themselves, Le., Grandparents' ability to care for Child and Child's relationship with Grandparents, rather than Mother's personal feelings toward Grandparents. Her feelings about the visits were related in email communications between Mother and Grandparents during the relevant time period. Although Mother expressed concern about allowing Child to stay overnight with Grandparents, she assured them that this was based on the fact that Child had struggled with her bedtime routine rather than a desire to keep Child from Grandparents. Mother expressed her opinion that Child should not "have overnight visits with others until she is at about 3 years old" and suggested that she might reconsider the possibility of overnights in the future. Mother told Grandparents that she was "not trying to keep [Child] from [them] in any way" and that she knew Grandparents loved Child. Though Mother may have expressed concerns about visitation later in the course of litigation, the evidence was sufficient to support the trial court's finding that during the period when visitation was occurring, Mother believed the visits went well.
143 Although Mother concedes that "the district court could have inferred that [Mother] did not grant [Grandparents'] requests for visits in August and no visits took place after July 2009 ...; [Child] did not have weekday telephone calls with [Grandparents] after July 2009 ...; and [Mother] requested supervised visitation in September 2009," she takes issue with its finding that she "denied any unsupervised visitation and contact" after July 2009. While it does appear that at least some weekend phone calls may have taken place after July 2009 and that the lack of visits in August may have been related to scheduling concerns rather than a blanket restriction by Mother (though in September Mother admittedly requested that visits be supervised), I see Mother's objection to this finding as overly punetilious. I see no practical difference between the succinet finding *611 made by the trial court and the more detailed facts identified by Mother; the gist of the facts, no matter how they are related, is that Mother severely restricted Grandparents' visitation with Child beginning soon after July 2009.
{44 Mother objects to the trial court's finding that she "denied visitation only after [Grandparents] wanted too much" because she maintains that there were other reasons for her decision to restrict Grandparents' visitation. While Mother's email to Grandparents does suggest that there were a number of factors impacting her decision to restrict visitation, it is clear that one of those reasons was Grandparents' request for extensive visitation. It also appears that the email was written directly in response to Grandparents' August 27 email requesting additional time. Furthermore, the evaluator suggested that Grandparents' demands for more time were "linked to [Mother's] decision to cut [off] contact." While the trial court's finding may have oversimplified Mother's reasons, it was not clearly erroneous and is supported by the evidence.
145 Finally, Mother objects to the trial court's finding that Mother may have restricted contact due to financial matters and Child's maternal grandmother's involvement. The evidence shows that the maternal grandmother urged Mother to deny overnight visits to Grandparents and that Grandparents and Mother had at least a minor confrontation over an ambulance bill for Father that the maternal grandmother taped to Grandparents' front door. The evaluator also opined that financial issues increased friction between the parties and appeared to have contributed to Mother's decision to restrict contact. Again, while these may not have been the only reasons for Mother's restrict, ing contact, and may even have been minor factors, the finding that they "may have contributed to the cessation of contact" is not clearly erroneous.
III. Application of Grandparent Visitation Statute
146 Mother next asserts that the trial court erred in determining that Grandparents had rebutted the parental presumption. See Utah Code Ann. § 80-5-2(2) (LexisNexis 2007). This is a mixed question of law and fact. See generally State v. Pena, 869 P.2d 932, 936 (Utah 1994) (explaining that a mixed question involves "the application of law to fact or, stated more fully the determination of whether a given set of facts comes within the reach of a given rule of law"). Thus, the "trial court's factual findings are reviewed deferentially under the clearly erroneous standard, and its conclusions of law are reviewed for correctness with some discretion given to the application of the legal standards to the underlying factual findings." State v. Brake, 2004 UT 95, 112, 103 P.3d 699 (citations and internal quotation marks omitted).
T47 As our supreme court noted in Uzelac v. Thurgood (In re Estate of S.T.T.), 2006 UT 46, 144 P.3d 1083, the structure of the Grandparent Visitation Statute is "confusing" and "provides very little guidance to a district judge trying to resolve a grandparent visitation dispute." Id. 186. The statute provides,
There is a rebuttable presumption that a parent's decision with regard to grandparent visitation is in the grandchild's best interests. However, the court may override the parent's decision and grant the petitioner reasonable rights of visitation if the court finds that the petitioner has rebutted the presumption based upon factors which the court considers to be relevant, such as whether:
(a) the petitioner is a fit and proper person to have visitation with the grandchild;
(b) visitation with the grandchild has been denied or unreasonably limited;
(c) the parent is unfit or incompetent;
(d) the petitioner has acted as the grandehild's custodian or caregiver, or otherwise has had a substantial relationship with the grandchild, and the loss or cessation of that relationship is likely to cause harm to the grandchild;
(e) the petitioner's child, who is a parent of the grandchild, has died, or has become a noncustodial parent through divoree or legal separation;
*612 (f) the petitioner's child, who is a parent of the grandchild, has been missing for an extended period of time; or
(g) visitation is in the best interest of the grandchild.
Utah Code Ann. § 80-5-2(2). Because a parent's decisions regarding grandparent visitation are presumed to be in the child's best interests and a parent's right to make such decisions is a protected liberty interest, grandparents seeking court-ordered visitation must rebut the parental presumption by clear and convincing evidence. Uzelac, 2006 UT 46, 1 28, 144 P.8d 1088.
1 48 Mother's analytical approach seems to assume that all of the statutory factors are to be employed as a sort of balancing test, with all the factors being weighed against all the others. Accordingly, her argument relies on factors that do not serve to rebut the parental presumption in this case, such as the fact that she is a fit parent. However, applying the factors in the Grandparent Visitation Statute as a balancing test would be inappropriate because the presumption does not need to be bolstered by the factors in order to remain intact-it persists unless and until Grandparents satisfy their burden to establish that a sufficient combination of the factors, supported by clear and convincing evidence, rebut the parental presumption. If the presumption has been rebutted by clear and convincing evidence, Mother can reestablish it only by undermining the evidence supporting the factors that rebut the presumption, not by alleging the nonexistence of other factors that Grandparents never relied on.
€ 49 In an attempt to clarify the Grandparent Visitation Statute and its application, the Uzelac court recognized that the statute actually identifies three separate categories of factors. Id. 129. The first category, which includes factors (c), (e), and (£), relates to special circumstances "where a family has been divided by some turn of fate-death, divorce, loss of custody, a missing person, or a declaration that a parent is unfit or incompetent." Id. 180. The second category, which includes factors (b) and (d), "encompasses situations where the state has an interest in protecting the child from harm." Id. §81. The third category, which includes factors (a) and (g), identifies threshold findings that must be made "even if the petitioner has satisfied other statutory factors." Id. 182. While findings relating to these threshold factors are necessary to an award of custody, they are not sufficient to justify such an award because that "would come too close to allowing a judge to supercede a parent's decisions based solely on a disagreement between the parent and the judge." Id. 188. As to the other factors, the court observed that "the presumption is most clearly rebutted when the court finds the existence of several relevant factors" but that the Grandparent Visitation Statute identifies "several means" by which this may be accomplished. Id. 184.
50 The supreme court's analysis makes clear that the various factors may be of different weight and may not all apply in the same way. See id. 136 n. 7. Some factors must be established as a threshold in every case in order to satisfy due process, see id. 11 32-33, 36 n. 7, and other factors may not be relevant at all under a given set of circumstances.[7] The trial court may even consider additional factors not listed in the Grandparent Visitation Statute. See Utah Code Ann. § 30-5-2(2) (providing that the trial court may find the parental presumption rebutted "based upon factors which the court considers to be relevant" and then identifying the specifically enumerated statutory factors as examples of factors that might be relevant). Accordingly, there is no magic number of factors necessary to rebut the parental presumption; rather, the determination of whether the parental presumption has been rebutted is highly fact dependent and must take into account the particular facts and cireumstances of the case as a whole. With these parameters in mind, I proceed to discuss the trial court's determination that the facts in this case justified an award of visita *613 tion to Grandparents under the Grandparent Visitation Statute.
1 51 Mother's argument focuses largely on her assertion that Child does not have a substantial relationship with Grandparents and that Child has not been harmed by being out of contact with them. Mother asserts that a substantial relationship arises only where the grandparents have a relationship with the child akin to that of a "custodian or caregiver," see Utah Code Ann. § 80-5-2(2)(d) (LexisNexis 2007), and that Grandparents' relationship with Child does not satisfy that standard. She further points out that neither the evaluator nor the trial court made any specific findings relating to whether Child had been harmed by Mother's decision to deny Grandparents visitation. These points are well taken. The only Utah case to consider the substantial relationship factor did so with respect to grandparents who had lived with the child and taken care of her "on a daily basis throughout most of the child's first four years of life." Uzelac 2006 UT 46, 142, 144 P.3d 1088. The relationship between Grandparents and Child clearly does not reach that level.[8] Furthermore, although the trial court concluded that "the denial [of visitation] has likely caused harm to [Child]," it made no findings in support of that conclusion, and there appears to be little support for it in the record.
52 I would not analyze these factors in depth, however, because in light of the parameters outlined above, I am not convinced that Grandparents must demonstrate such an involved relationship or harm resulting from severance of the relationship in order for the trial court to consider an award of visitation where the combination of other compelling factors is sufficient to rebut the parental presumption. Specifically, in this case, the trial court found that Father had died, that Mother unreasonably restricted Grandparents' visitation, that Grandparents are fit to care for Child, and that visitation is in Child's best interests. These findings are supported by clear and convincing evidence and are sufficient to rebut the parental presumption.
153 Although the fact of Father's death alone would not justify a court award of grandparent visitation where the living parent continued to permit reasonable visitation between the child and the grandparents, I consider this factor very relevant in cireum-stances, such as those presented in this case, where the parent has "denied or unreasonably limited" visitation. See Utah Code Ann. § 80-5-2(2)(b).
The [Grandparent Visitation recognizes that when a family unit has been touched by ... events [dividing it,] a situation may arise where the child's interests differ from those of the parent. This is particularly true where the direct family line between grandparents and grandchildren has been severed, leaving the "in-law" relationship as the only remaining adult connection. Recognizing the potential for conflict in the relationship between the parent and the "in-law" and the resulting potential for interference with the grandparent-grandchild relationship, the statute provides an avenue for grandparents and grandchildren to maintain their relationship.
Uzelac v. Thurgood (In re Estate of S.T.T.), 2006 UT 46, ¶ 30, 144 P.3d 1083 (citation omitted).
$54 The concerns identified by the supreme court proved justified in this case when, following a number of disputes between Mother and Grandparents, Mother informed Grandparents that she intended to limit them to only one phone call with Child per month and one supervised visit "for a few hours" every other month. Although Mother maintains that these restrictions were reasonable under the cireumstances, the trial court found-and the evidence supports, see supra 144-that they were primarily the result of Grandparents wanting what Mother *614 perceived to be too much visitation,[9] and possibly related to "[flinancial matters and [Child's maternal grandmother's} involvement." Furthermore, both the evaluator and the trial court considered Mother's other claimed concerns to have arisen only after the breakdown of the parties' relationship, and observed that she seemed to have previously been untroubled by Grandparents' ability to care for Child. In short, the evidence clearly and convincingly shows that Mother's decision to restrict Grandparents' visitation was based primarily on factors other than Child's best interests and was therefore unreasonable.
155 The evidence also supports the trial court's determinations that Grandparents were fit and that visitation was in Child's best interests. The trial court found that Grandparents had cared for Child on many occasions prior to the time their visitation was restricted and that Mother permitted them to spend time with Child because she knew they loved Child. The evaluator stated that Mother had relied on Grandparents for child care in the past and opined that Grandparents "appeared to love [Child] very much and would not harm her." She also testified that Grandparents "are fit and proper to have grandparent time." Witnesses at trial also testified as to Grandparents' fitness and stability. As to best interests, the evaluator opined,
The more time this child spends with her grandparents and her paternal relatives, the better off she will be in terms of knowing and understanding that many people love her. She will be more self confident and well rounded having full access to both sides of [her] family as well as her stepfather's family.
Thus, the threshold fitness and best interests factors were also established by clear and convincing evidence. Accordingly, the trial court did not err by determining that the parental presumption was rebutted or by awarding visitation to Grandparents.[10]
IV. Other Constitutional Issues
156 Finally, Mother asserts that the trial court's award of approximately thirty-six hours of grandparent visitation per month violated her constitutional rights because it was not narrowly tailored. The Grandparent Visitation Statute instructs that the court may order "reasonable rights of visitation if the court finds that the petitioner has rebutted the [parental] presumption." Utah Code Ann. § 30-5-2(2) (LexisNexis 2007). Although trial courts might benefit from legislative guidance on what constitutes "reasonable rights of visitation" for a grandparent, I fail to see how an award of reasonable visitation is not narrowly tailored to the state's interest in preserving the grandparent grandchild relationship under cireumstances such as those presented in this case. See generally Uzelac, 2006 UT 46, 1 30, 144 P.3d 1083. And Mother has failed to explain why the trial court's award of visitation was unreasonable, other than to assert that "a far more limited order-or none at all-would have sufficed." Because I would consider an award of reasonable visitation to be narrowly tailored to advance the state's interest, and because Mother has not adequately contested the reasonableness of the trial court's visitation award, I would reject Mother's argument.
57 Finally, Mother challenges the standing provisions of the Grandparent Visitation Statute. She asserts that a statute "autho *615 rizing all grandparents to sue at any time" is not narrowly tailored and permits "[flit parents ... [to] be hauled into court to defend suits for temporary custody absent pleading and a preliminary showing of compelling circumstances that would tend to override the presumption that the parent's visitation decision is entirely appropriate." Even accepting Mother's assertions as true, I do not read the Grandparent Visitation Statute so broadly. The statute provides, "Grandparents have standing to bring an action in district court by petition, requesting visitation in accordance with the provisions and requirements of this section." Utah Code Ann. § 30-5-2(1). Because the Grandparent Visitation Statute goes on to outline the limited circumstances under which grandparent visitation may be considered, see id. § 80-5-2(2), permitting a grandparent to bring an action "in accordance with the provisions and requirements of this section" does require the grandparent to plead circumstances that might override the parental presumption, see id. § 30-5-2(1). Thus, contrary to Mother's assertion, the Grandparent Visitation Statute does not broadly grant standing to all grandparents and is sufficiently narrowly tailored to protect parents from unwarranted infringement on their constitutional rights.
V. Conclusion
1 58 Ultimately, I disagree with the majority regarding the constitutionality of the Grandparent Visitation Statute as applied in this case in light of our supreme court's holding in Uzelac. Accordingly, I would examine the merits of Mother's other arguments. Having done so, I would conclude that the trial court's factual findings were not clearly erroneous. I would also determine that Grandparents rebutted the parental presumption by clear and convincing evidence and that the trial court did not err by awarding grandparent visitation under the facts and cireumstances of this case. Finally, I would conclude that the trial court did not violate Mother's constitutional rights by awarding Grandparents reasonable visitation and that the Grandparent Visitation Statute's standing provision is not overly broad. Accordingly, I would affirm the trial court's visitation award.

. A harm requirement would make it nearly impossible for grandparents of very young grandchildren with fit parents to obtain an award of grandparent visitation. - While the legislature might very well deem it appropriate to impose such a limitation, I do not think due process mandates that the state's interest in preserving a child's relationship with both sides of her family where the family unit has been divided be limited to circumstances where the child is old enough to have suffered severe emotional harm at the severing of that relationship.

. While the Uzelac court did not explicitly employ strict scrutiny in its analysis, it certainly appears to have employed something greater than rational basis scrutiny in its evaluation of the Grandparent Visitation Statute. The majority observes that a number of other courts have concluded "that a compelling state interest is established only where denial of visitation would significantly harm the grandchild." See supra 127. However, the Uzelac court's analysis strongly suggests that another state interest may justify an award of grandparent visitation, Le., preserving the child's right to a relationship with both sides of her family where that "family has *610 been divided by some turn of fate-death, divorce, loss of custody, a missing person, or a declaration that a parent is unfit or incompetent." Uzelac v. Thurgood (In re Estate of S.T.T.), 2006 UT 46, 1 30, 144 P.3d 1083; see also discussion infra 153. The court took no issue with the legislature's identification of such circumstances as factors tending to rebut the parental presumption and took pains to explain why that category of factors furthered a state interest. See Uzelac, 2006 UT 46, 130, 144 P.3d 1083. I do not know whether the supreme court intended by this discussion to suggest that preserving a child's bonds with both sides of her family is a compelling state interest or whether it reached this conclusion by employing an intermediate level of scrutiny rather than strict scrutiny. However, it appears to me that the supreme court's discussion approved this state interest as constitutionally sufficient to justify an award of grandparent visitation, under appropriate circumstances, even in the absence of significant harm.

. In fact, some may be mutually exclusive. For example, the parent who is a child of a grandparent is unlikely to be both dead and missing, though those factors are listed separately. See Utah Code Ann. § 30-5-2(2)(e)-(f) (LexisNexis 2007).

. This is not to say that a grandparent must necessarily have assumed the role of a parent in order to establish a substantial relationship under the Grandparent Visitation Statute. But because I do not think it was essential for Grandparents to establish this factor in order to rebut the parental presumption, see infra 152, I will not delve into the question of what constitutes a substantial relationship. It is clear, however, that the relationship between Child and Grandparents was not as substantial as the relationship between the grandparents and grandchild in Uze-lac.

. The record does suggest that Grandparents demanded extensive visitation comparable to that afforded to non-custodial parents, see generally Utah Code Ann. § 30-3-35 (LexisNexis Supp. 2012), and that they threatened to sue for court-ordered visitation if Mother did not honor their demands. However, like the trial court, I fail to see ""the nexus between a request for more contact and cutting off all but supervised visitation when that didn't exist before." The parental presumption relates to whether a parent's decisions regarding grandparent visitation are in the best interests of the child. Although Mother may have understandably felt pressured by Grandparents, I fail to see how their request for more time or even their threats to seek a court order leads to the conclusion that supervision and reduced contact was in Child's best interests.

. I do acknowledge that this is a very close case. Nevertheless, as the trial court's factual findings are entitled to deference and those findings are sufficient to rebut the parental presumption, I would not think it appropriate for us to substitute our judgment for that of the trial court by disturbing its visitation award.